Ruffin, C. J.
 

 A point obscurely appears in the case, of which something might, possibly, have been made for the defendant, if it had been urged on the trial. It is, that Adam Sharp, by the consent of his son and the plaintiff, actually occupied parts of the land, he had conveyed, including the meadows on which the grass grew, and, as he remained on the land for about five months of the year 1845, that he was entitled to the grass then growing and could, consequently, sell it. However that might be, the question was not raised on the trial, and therefore cannot be considered here.
 

 On the point which was made, the decision is clearly supported by the Act of 1840, c. 28. The
 
 St.
 
 27 Eliz. c. 4, enacts, that conveyances of land, made with intent to defraud purchasers, shall, only, as against purchasers for good consideration, be void. Under that Act it was, of course, held, that notice of the fraudulent deed did not impeach the title of the purchaser ; because the bad faith of the deed vitiated it, and, with notice of the deed, the purchaser had also notice of the fraud. But the legislature thought proper in 1840. to alter that and declare, that no person shall be deemed a purchaser within the meaning of the former Act, unless he purchase the land
 
 *343
 
 for the full value thereof, without notice, at the time of his purchase, of the conveyance by him alleged to be fraudulent. This language is as precise and positive as it can be. It is not open to construction, and is decisive against the defence. The counsel for the defendant has, however, zealously argued against it, because thereby a transaction, expressly designed to defraud the donor’s creditors, and essentially dishonest, becomes good as if it had been founded on honest purposes, merely from the fact, that the purchaser from the fraudulent grantor had knowledge of the deed, though at the same time he had knowledge also of the dishonesty of it. It was contended, that the legislature could not have meant to adopt a principle in support of contracts so immoral. But it is in vain upon any such reasoning to struggle against the express words of an Act of Assembly. Besides, the legislative purpose in the Act seems to be misunderstood. It was not simply to give efficacy to fraudulent conveyances. They were before valid against the parties and all the world, except two classes of persons, namely, creditors and purchasers for value. Now in respect of the latter class, the Act of 1840 changes the policy thus far: that conveyances shall be good against them, as against the rest of the world, unless they buy for a full price and without knowledge of the fraudulent conveyance. In other words, the Act means, that such a purchaser shall not take advantage of the prior fraud, because he was not, himself, a meritorious purchaser, since he either did not give a fair price, or bought with his eyes open and to enable the vendor to defeat his own prior conveyance. Which is the better policy of the two, and tends the more to moral ends, it was for the legislature to consider. The Courts must administer the law as it is given to them by the legislature.
 

 Per Curiam. Judgment affirmed.