The following is the case as made up and amended by the counsel of the parties, and as settled by the presiding Judge, and transmitted as a part of the record to this Court.
In support of the allegations in his complaint, the plaintiff offered evidence tending to show, that in April, 1861, Manly Barnes, the father of the feme plaintiff, the wife of the plaintiff, Triplett, executed and delivered to her a deed in fee simple for the land which is the (590) object of this controversy; that the consideration expressed in said deed, was $200, but that nothing was paid. About twelve months after the delivery of this deed, the grantor therein, the said Manly Barnes, executed and delivered to one John Witherspoon and Sarah H. Dula, and also the intestate of the defendant, Clarke, a deed in fee for the same land, for a valuable consideration; that before the said John Witherspoon bought said land and accepted his said deed, he had notice of the deed before that made to the said Louisa, the wife of the plaintiff, Triplett.
Plaintiff further showed, that about the time Witherspoon received his deed for the land, he, the plaintiff, went off to the army, and that during his absence, Witherspoon obtained possession of the land, though the feme
plaintiff had theretofore received the rents for the same for one or two years; that since the surrender and close of the war, the wife of the plaintiff, and grantee in the first deed, as above stated, has become insane and has destroyed many of the valuable papers of her husband, and that the deed from her father to her for this land, has been lost or destroyed since 1868 or 1869, and that the same was never registered.
The plaintiff testified, that at the time the deed was made to his wife he did not know that Barnes, her father, owed any debts; that he thought at the time, that the deed was a bona fide gift of said land to his wife. Other witnesses testified, that at the time the deed was made to the plaintiff's wife, Barnes was considered solvent.
Defendants offered evidence tending to show that Barnes at the time of the conveyance to his daughter, made another deed to her for another tract of land, which, with the tract in question, was all the land he owned; that he was then a man of middle age, with a wife and four or five children, some of whom were small; that he retained possession of said land until Witherspoon bought and took possession of the same; that Barnes was largely indebted when he made the deed *Page 477 
to his daughters; and that after the close of the war he had, with the consent and knowledge of the plaintiffs, mortgaged one hundred acres, being the remainder of the same tract he had sold to (591) Witherspoon, to P. and A. H. Horton, to secure a debt he owed them, and which he subsequently sold to the Hortons with the knowledge and consent of the plaintiffs, who joined with him in the deed. That at the time of this sale to the Hortons, Barnes had said in the presence of the plaintiffs, that the deed to the feme plaintiff was of no effect and a sham, for he had made it to avoid a debt which he owed as surety for one Anderson, and a debt which he owed to one Howell and another, for some negroes; that he, Barnes, had received to his own use, with the consent of the plaintiffs, a large part of the purchase money paid by the Hortons.
It was admitted that John Witherspoon was dead, and that the defendants, Witherspoon and Dula, were his heirs-at-law, and that the defendant, Clarke, was his administrator. That Clarke had obtained an order to sell the land in controversy for assets, and had sold the same, and that the defendant, Winkler, was the purchaser; said sale had been confirmed by the Court, though the plaintiff, Triplett, testified that he had no notice of the proceedings until after the land was sold.
Plaintiffs' counsel, among other things, asked, in writing, his Honor to charge, that "although the jury believe that Barnes, at the time of making the deed to the plaintiffs, his daughter had the purpose to defraud his creditors, and that the feme plaintiff knew of this purpose, yet these facts would raise no such trust for Barnes, as could be enforced by him, or any one who purchased from him with knowledge of the execution of the deed to his daughter.
His Honor refused this instruction, but charged the jury, that if there was an agreement at the time the deed was made, that the land should be used for the purpose of Barnes, and sold by him whenever he pleased, that the plaintiff could not recover.
Plaintiffs further asked his Honor to instruct the jury, that the instructions asked in the foregoing prayer, would be true although the jury should believe that at the time the daughter accepted (592) the deed. she agreed with her father to hold said land for his use. This the Court also declined to give.
Defendants asked his Honor to give the following instructions to the jury, which was done, and to which the plaintiffs excepted.
"If the jury believe that the deed was made by Barnes to his daughter, the feme plaintiff, on a secret trust that she was to hold the legal title for the use and benefit of Barnes, then plaintiffs could not recover. *Page 478 
That if it was understood between Barnes and his daughter, that the paper though signed and sealed and put into the possession of the daughter, was not to be a deed, the plaintiffs could not recover.
Defendants' counsel excepts to the foregoing statement in this: The evidence was that Witherspoon heard a witness say, that Barnes had drawn and signed a deed; but there was no evidence that he knew Barnes had parted with the possession of the paper; nor any evidence that his daughter, the alleged grantee received any rents. The evidence was that Barnes continued in possession all the time; at least, there was no change of possession, and Barnes paid all the taxes.
Defendants' counsel did not recollect that his Honor refused to give the first instruction asked by the plaintiff, or that such was asked. His recollection was, that it was admitted that Witherspoon claimed as a purchaser, and that his Honor refused to allow an issue as to fraud on creditors to be inserted. Further, Tripplett [Triplett], the plaintiff, did not swear that on his return from the army the deed was in his wife's possession, but in the house, in which she and Barnes, her father, were living, he, Barnes, never having been out of the possession of the land.
This amendment his Honor, in settling the case, adopted.
There was a verdict for the defendants. Motion for a new trial granted and discharged. Judgment and appeal by the plaintiffs.
Whether the conveyance from Barnes to the feme plaintiff, be considered in regard to the 13th Elizabeth, or the 27th Elizabeth, it (593) is valid as against Witherspoon; for the 13th Elizabeth enacts that conveyances to defraud creditors, shall be void, "only as against that person, his heirs," c., "where actions, debts, c., by such fraudulent devices and practices aforesaid, are, shall, or might be in any wise disturbed, hindered, delayed or defrauded"; and Witherspoon was no creditor of Barnes.
And the 27th Elizabeth, as re-enacted in this State, applies only to such subsequent purchasers as shall purchase, "without notice before and at the time of his purchase, of the charge, lease, and incumbrance by him alleged to have been made with intent to defraud." See Revised Code, chapter 50, sections 1 and 2, page 298.
A conveyance contrary to the 13th Elizabeth is good against the grantee and all the world, except only creditors of the grantee who might be thereby defrauded. See Metcalf on Contracts, p. 268. See also Smith's Leading Cases, vol. 1, p. 41, note at bottom of page.
Under the 27th Elizabeth, as re-enacted in this State, (chap. 50, *Page 479 
sec. 2, Revised Code,) "A purchaser from one who has previously made a fraudulent conveyance, shall not be protected in his purchase unless he has purchased for full value, and without notice of the fraudulent conveyance. See Hiatt v. Wade, 30 N.C. 340.
That the deed was good against Barnes, see Harshaw v. McCombs,63 N.C. 75.
Plaintiff prayed his Honor to instruct the jury that if Barnes conveyed the land to plaintiff, Louisa, to defraud his creditors, and she knew it was done for that purpose, these facts raised no such trust,c. The position that a mere purpose to defraud the creditors of the grantor, concurred in by the grantee, creates a trust by implication, was not assumed by defendant's counsel, or presented by the case. It was therefore a mere abstract proposition, upon which (594) the Court ought not to have charged the jury. State v. Martin,24 N.C. 101; 25 N.C. 470.
Even if the counsel meant to ask his Honor to charge that if Barnes conveyed the land to plaintiff Louisa, in trust for himself, to defraud his creditors, such trust was fraudulent, and could not be enforced by Barnes, or one claiming under him, having notice of the deed: it ought not to have been given. In Equity the trust and the land are convertible terms, equitassequitur legem. No such effect could therefore be given to mere notice of the deed, for it is presumed that every purchaser from a cestui que trust has notice of the deed to his trustee. If anything could have the effect contended for, it would be notice of the fraud. But the prayer assumes that the plaintiff Lousia, agreed to stand seized of the land in trust for her father, to enable him to defraud his creditors; and yet seeks to set up a deed which is not registered, and is lost on the ground of accident. Will a Court of Equity aid her under such circumstances? No, certainly; for he must come into Court with clean hands. But suppose the proposition to be, although the conveyance from Barnes to plaintiff Louisa is fraudulent as to creditors, yet the defendant cannot take advantage of the fraud, because he does not represent creditors. Thus stated, there are several objections to it:
1. In Fulenwider v. Roberts, 18 N.C. 280, and in Inglis v. Donalson,3 N.C. 102, it is held that it is generally true that deeds void by reason of bad faith as to creditors, are also void as to purchasers. They are not indeed void as to purchasers because void as to creditors, *Page 480 
but by reason of bad faith, which alike vitiates them as to purchasers and creditors. RUFFIN, C. J., in Fulenwider v. Roberts, supra.
2. Because there was evidence in the case that the conveyance from Barnes to plaintiff Louisa, was merely colorable; in other words, that it was a trick and a juggle to blind others without passing the title. And although the defendant did not claim as a creditor, yet (595) evidence of the indebtedness of Barnes was important, to show the inducement for such colorable transaction, and the proposition above stated would tend to mislead the jury.
3. The complaint seeks to establish the lost unregistered deed, on the ground of accident; and the instruction asked admits that it was intended to defraud creditors, and that plaintiff Louisa concurred in the fraudulent purpose.
It is submitted that his Honor committed no error in giving the instruction asked by defendant's counsel. Plummer v. Woodly, 35 N.C. 265.
His Honor erred in giving the instruction, "if the jury believe that the deed was made by Barnes to plaintiff Louisa, on a secret trust that she was to hold the legal title for the use and benefit of Barnes, plaintiff could not recover."
This secret trust was void, and would not have been enforced by the Courts, because the purpose was to defraud creditors and purchasers, and such a trust is not fit to be executed.
It follows that the plaintiff Louisa had the legal title subject only to the rights of creditors and purchasers under 13 and 27 Elizabeth. There are no creditors in this case; so 13th Elizabeth is out of the plaintiff's way.
Witherspoon was a purchaser for valuable consideration, but he had notice of the conveyance by Barnes to the plaintiff Louisa, and under the act of 1840, he is not protected against this conveyance, although it was erroneous and made with a secret trust for the purpose of fraud.
This matter is settled by Hiatt v. Wade, 30 N.C. 340, where a construction is put upon the act of 1840, and the alteration in regard to 27th Elizabeth is so clearly stated that I will adopt the language of Chief Justice RUFFIN: "The statute, 27th Elizabeth, enacts that conveyances of land made with intent to defraud purchasers, shall, only as against purchasers, for good consideration, be void; under that act, it was, of course held that notice of the fraudulent deed did not (596) impeach the title of the purchaser; because the bad faith of the deed vitiated it, and with notice of the deed, the purchaser had also notice of the fraud. But the Legislature thought proper in 1840, *Page 481 
to alter the law and declare, that no person shall be deemed a purchaser within the meaning of the former act unless he purchase the land for the full value thereof, without notice at the time of his purchase of the conveyance, alleged by him to be fraudulent."
This language is as precise and positive as can be.
Error.
PER CURIAM. Venire de novo.
Sc 74 N.C. 476; Bank v. Adrian, 116 N.C. 549; Pass v. Lynch,117 N.C. 455; Brinkley v. Brinkley, 128 N.C. 509; Brinkley v. Spruill,130 N.C. 48.