## Gill, for use of Rankin, *versus* Henry.

1. A mortgage or bond made with the intent to defraud creditors, with an agreement on the part of the mortgagee not to enter the same of record, is invalid, and such an agreement cannot be set up as a defence to an action on the mortgage by the mortgagee or his assignee.

2. If a transaction is covinous, and the intent was to cover the property from creditors, in case of embarrassment of either party to it, neither one nor the other can set up the fraud as between themselves to defeat the other of any claim under it. A mortgage thus given is good as between them; it would be void only as against the interests intended to be defrauded.

3. A party to such a transaction cannot give in evidence his own fraud in defence against his own act, whether it be an absolute deed, or a mortgage, or a confession of judgment, and no matter how it may be mingled with other arrangements or agreements between the parties.

October 8th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county*: Of October and November Term 1880, No. 182.

In the court below this was a judgment wherein S. B. W. Gill, to the use of Isaac Rankin, was plaintiff, and Alexander Henry, defendant, entered on the 10th of December 1877, upon a bond with warrant of attorney, which, upon application of defendant, was opened for the purpose of defence, whereupon the defendant filed a plea of payment, and the case was tried upon this issue.

The facts are sufficiently stated in the opinion of this court.

[Gill v. Henry.]

*A. B. Hay* and *Slagle & Wiley*, for plaintiff in error.—Though we have made a number of assignments of error they are resolvable into one question, which may be briefly stated as follows: The bond and mortgage having been executed and delivered to Gill by Henry for the purpose of hindering, delaying and defrauding creditors, and without any other consideration, can he now set up that fact as a defence to the bond in the hands of the plaintiff to whom it was assigned by Gill?

This case is fully covered by authorities under circumstances which cannot be distinguished from the facts of this case: Sherk v. Endres, 3 W. & S. 255; Killinger v. Reidenhauer, 6 S. & R. 531; Foster v. Waltor, 5 Watts 378; Murphy v. Hubert, 4 Harris 50; Evans v. Dravo, 12 Id. 62; Hendrickson v. Evans, 1 Casey 441; Williams v. Williams, 10 Id. 312; Blystone v. Blystone, 1 P. F. Smith 373. It is apparent from these cases that Gill might have recovered upon the bond for his own use; and it is not suggested in any case we have found that a suit could not be maintained in his name for the use of another. If he could recover, it must be shocking to every sense of justice to hold that a party to whom he had assigned it in payment of his debt could not recover merely because he had not inquired of his accomplice whether the certificate of no defence executed by him, and left in possession of Gill, was a part of a scheme to defeat and delay his creditors, or to enable Gill to impose upon an innocent and confiding client.

*D. T. Watson* and *W. B. Rodgers*, for defendant in error.—The covinous transfers and conveyances which the law avoids as to creditors and holds good as between the immediate parties, are executed transactions, which, if permitted to stand, would have the noxious effect the statute seeks to avoid. Henry's own story, in the court below, was the sole evidence as to this alleged attempt to defraud. Doubtless it may be true that Gill intended to use the bond and mortgage for his own purposes, but so far as Henry was concerned, believing his counsel, he thought it was true that the bond and mortgage lying in Gill's safe would keep him out of court, and that without any dishonesty on Henry's part. By this transaction did Henry hinder, delay or defraud his creditors? Evidently not, because a bond and mortgage lying in Gill's safe was no more effective to produce such a result than if they had not been signed, and as Henry never agreed to have them taken out of Gill's office, he never did do anything by which Henry's creditors could be delayed, hindered or defrauded. This being so, if Gill in violation of his agreement took the bond out of his safe, and either sued upon it to collect it, or had judgment entered thereon, would the law close Henry's mouth from testifying to the manner in which Gill

[Gill *v.* Henry.]

obtained the bond; for unless it would do so as to Gill, it would not do so as to Rankin, Gill's assignee.

Mr. Justice GREEN delivered the opinion of the court, October 25th 1880.

This was a judgment bond given by the defendant Henry to the legal plaintiff, Gill, for the payment of $8000, dated April 28th 1875. It was accompanied by a mortgage of same date and amount, which was recorded April 30th 1875. On June 1st 1875, Gill assigned the bond and mortgage to the plaintiff, Isaac Rankin, and handed him at the same time a certificate of no defence signed by Henry. The assignment was made in consideration of $5795, which Gill owed Rankin on May 1st 1875, for moneys which Rankin had at various times left with Gill for investment. As between Gill and Rankin, therefore, a good consideration passed for the transfer of these securities. On January 26th 1876, Gill, without the knowledge of Rankin, entered satisfaction of the mortgage, and in the fall of 1877 he fled the country in consequence of discreditable transactions in which he was engaged. When Rankin discovered that Gill had satisfied the mortgage of record he entered judgment on the bond in suit on December 10th 1877. Subsequently, on the application of the defendant, the judgment was opened, and the case was tried before a jury who rendered a verdict for the defendant under instructions from the court, which are now brought before us for review by various assignments of error.

The actual defence set up was that the bond was given without any consideration. The reason why it was given appears in the testimony of the defendant himself. He said on the trial, " I got into trouble with the bank, the Allegheny Trust Company. I came over to Mr. Gill. They were talking of suing, or had. They were commencing to sue, and I didn't want to have any trouble incurred, and I came over to Mr. Gill and asked him what I should do, and he said he could fix it for me, and I asked him how. He said that he could draw up a bond and mortgage, and it could lay in his office, which would keep me out of court; I would have no trouble. I told him I didn't want to avoid payment of the assessments as they became due. I did not want to be sued. I was afraid of being sued by creditors. When I came to him I knew I was liable for all the debts of that concern. It was with that view I made that mortgage; he said it would keep the property safe for me—keep the property safely covered up." This language is so extremely plain that there is no difficulty in understanding it. It proves beyond all question that the bond and mortgage in question were given for the express purpose of hindering, delaying and defrauding the creditors of Alexander Henry, the defendant. No amount of refinement or speculation can clothe ·it with any other meaning. The plain, blunt truth of the case is,

[Gill *v.* Henry.]

that a defendant in a judgment makes defence against it on the express ground that it was given without consideration for the purpose of defrauding his creditors. That such a defence would be absolutely worthless, even against the plaintiff himself, the *particeps criminis*, has been so many times decided by this and other courts, that it would be a waste of time to cite the authorities. Neither the very able counsel for the defendant, nor the learned judge of the court below, pretends to dispute the doctrine. Yet this defence was permitted to prevail in this case against an innocent third person, who received these securities in consideration of a large sum of money, $5795, which was due him previous to, and at the time of, the assignment from Gill, who was the holder of them. It is not pretended that Rankin had any knowledge whatever of the original transaction. In point of fact he was entirely ignorant of it. How did it happen that the defence was successful? On the trial a very ingenious theory was set up, that it was agreed between Henry and Gill, at the time the bond and mortgage were given, that they should remain in Gill's office. It was inferred from this that they were not to be entered of record, and that, therefore, it was a fraud on Gill's part to record the mortgage, and for either him, or any one claiming title under him, to enter up the judgment. It was argued that this was an independent feature of the transaction which would prevent Gill from claiming under either security, and as it would be a good defence against him, so it would be also against any assignee of his who failed to make special inquiry of the defendant as to whether he had any defence against the instruments. The familiar doctrine was invoked that the assignee of a bond takes it subject to all defences of the obligor against the obligee. This theory received the sanction of the court below, and the case was left to the jury with the instruction that, if they believed there was such an agreement between Gill and Henry, it would be a fraud upon Henry by Gill to enter up the securities and attempt to collect them, which the law would not permit; and that as Rankin had merely taken an assignment of the bond and mortgage in consideration of a previous indebtedness, he could not be regarded as an innocent purchaser for value, and in that event, their verdict must be for the defendant. Upon what testimony this question of fact was left to the jury we do not certainly know. The evidence has not been printed and is not before us. But as Gill was a fugitive from justice and was not examined, and as the transaction occurred between Gill and Henry alone, and as only testimony delivered by Henry himself is quoted in support of the ruling of the learned judge, we infer there was no other testimony in the case than his upon which the jury could have acted. We have considered it all, and in our opinion it is entirely insufficient to sustain the verdict, and should not have been left to the jury as competent for the purpose for which it was sub-

[Gill *v.* Henry.]

mitted.   The proposition of fact is that there was an agreement between Henry and Gill that the bond and mortgage were not to be entered of record or collected.   We do not find a particle of testimony to that effect.   In what we have heretofore quoted there is but a single ·expression that affords the basis of an argument to that effect, and that was this, " He said he could draw up a bond and mortgage and it could lay in his office, which would keep me out of court.   I would have no trouble."   But this proves nothing more than that Gill said the papers could lie in his office.   It does not prove an *agreement* even to *that* effect, nor that their remaining in Gill's office was any essential part of the transaction.   But even if it did, such an agreement is very far short of an engagement not to enter them of record.   Without being so entered they were of no more value for the purpose for which they were given than so many pieces of blank paper.   It will not do to say that Henry may have supposed or believed that they would have accomplished his purpose if kept secret.   There is no evidence that he was so utterly stupid as that.   What he wanted was publicity not privacy, as to these papers.   He wanted to keep his creditors at bay by having his property *appear* to be heavily· encumbered.   But to deposit and keep the papers for such encumbrance in the safe of an attorney would prevent, and not in any manner promote, such appearance.   The only other testimony quoted in the printed. argument of counsel for the defendant in support of his position, is the following :

Q. " Mr. Henry, I wish you would state what, if anything, occurred—what, if anything, was said between Mr. Gill and yourself, as to where this bond and mortgage was to be kept and for whom ?"

A. "It was to be kept in his office.   He said he would leave it in the safe.   It was to be kept in the office."

Q.  By the court :  " For whom ?"

A.  " There was nothing said about whom, your Honor."

He would not even say it was to be kept for himself.   There is not a word in this testimony about any agreement that the papers should not be entered of record, nor even that they should not be collected.   There is nothing in it but a declaration of Gill's that the *papers* should be lodged and kept in his safe, a very suitable precaution for their preservation.   It was a mere matter of custody of the corpus of the instruments.   As we have before said we regard this testimony as entirely insufficient to prove an agreement that the bond and mortgage were not to be entered of record or collected, and that the case would have to be reversed on that ground.   But even if such an agreement had been made and were fully proved, we could not permit it to have any efficacy for another reason.   The very utmost effect that could be given to such an arrangement would be to regard it as a parol agreement

[Gill *v.* Henry.]

by Gill to hold the bond and mortgage for the benefit of Henry. But it has been held time and again that such an agreement is in itself a fraud, and will not be enforced. In the case of Murphy *v.* Hubert, 4 Harris 50, the present chief justice, while sitting as district judge, used the following terse and forcible language on this subject: "Now if the fact was so, I instruct you that it is not competent for any persons claiming under Samuel Murray to show a parol trust either for himself or his children, said children being mere volunteers. Courts of justice do not sit to extricate a rogue from his toils. To enable the party to show a parol trust in the face of an absolute deed, the purpose must have been an honest one, else by such fraudulent device a dishonest man would be sure never to lose, and he has the chance of gaining. He may accomplish his fraudulent design, and then he is sure to get back his property, or, what is the same thing, keep it for his family; this would be affording encouragement to such frauds. On the contrary, it is the policy of common sense and common law to environ such a person with all possible perils, and to make it appear that honesty is always the best policy." This court, fully approving of the foregoing, said, on p. 57: "If there be a point settled on reason and authority it is, that a deed intended to defraud creditors, although void as against creditors, yet is valid as against the grantor and those for whose benefit it is designed, whether it be the grantor himself, his child or children, or a stranger. * * * That a trust cannot be enforced when it is designed to effect a fraud on creditors, is settled by authority. The cases, without exception, decide that such a trust is void in itself, and therefore incapable of being made the foundation of a right in others."

In the case of Williams *v.* Williams, 10 Casey 312, a scire facias was brought upon a mortgage by the mortgagee against the administrators of the mortgagor. On the trial the defence offered to be proved was that the mortgage was without consideration, and was taken by the plaintiff from his two sons, soon after their attaining the age of twenty-one years, with the understanding that it should not be collected unless they failed in business. Speaking of this defence, this court said: "If the transaction were covinous, and the intent was to cover the property from creditors, in case of embarrassment of either party to it, neither one nor the other could set up the fraud as between themselves to defeat the other of any claim under it. The mortgage would be good as between them; it would be void only as against the interests intended to be defrauded."

In Blystone *v.* Blystone, 1 P. F. Smith 373, which was, as this is, the case of a judgment given by confession and opened to be tried on the merits, and the defence was that it was given to defraud creditors, this court, Thompson, J., said: "If parties concoct a scheme to defraud others, and resort to a judgment to effect their

[Gill *v.* Henry.]

object, both having in view the same thing, there is no fraud between them assuredly of which either can complain or call on a court for relief.   Courts will not move to change the condition of the parties any more readily in such case than they would to enforce an executory contract, which, as a general rule, they will not do."

But it is useless to multiply citations.   The same principles will be found in Sherk *v.* Endres, 3 W. & S. 255; Evans *v.* Dravo, 12 Harris 62; Hendrickson *v.* Evans, 1 Casey 441, and many other cases.   They all proceed upon the idea that the defendant cannot give in evidence his own fraud in defence against his own act, whether it be an absolute deed or a mortgage or a confession of judgment, and no matter how it may be mingled with other arrangements or agreements between the parties.   For these reasons we are of opinion that the learned judge of the court below was in error in his general charge and in his answers to points, complained of in the several assignments of error.

Judgment reversed, and a *venire facias de novo* awarded.