BANK OF NEW HANOVER et al v. ADRIAN and VOLLERS et al.

*Action to Foreclose Mortgage—Fraud—Parties in Pari Delicto— Equity Jurisdiction — Question for Jury— Trustee of Insolvent Debtor Represents Creditors.*

1. Where it appears to a Court of Equity that the parties to a suit are in *pari delicto* in respect to a covinous agreement, the Court will not interfere to give relief, but will leave the parties to exercise their rights as they may be permitted in a Court of law.

2. Where, in the complaint in an action to foreclose a mortgage against an insolvent mortgagor it appeared that the mortgage was given to secure notes for $90,000, payable in three years at 4 per cent. interest, and was not filed until the mortgagee became insolvent, and the answer filed by the assignee of the mortgagor (to which a demurrer was entered) alleged that the mortgage was given under an agreement and with the intent to hinder, delay and defraud the mortgagor's creditors; *Held,* That neither party was entitled to equitable relief and the Court will leave them to settle, in a Court of law, the question as to the fraudulent intentions of the parties and whether the assignee of the mortgagor was a subsequent purchaser with notice so as to postpone the creditors of the mortgagor to the claims of the mortgagee. (AVERY, J., *dissents.*)

BANK *v.* ADRIAN.

3. In an action to foreclose a mortgage against an insolvent mortgagor and his assignee to which the creditors of the former are not parties, the assignee represents the creditors and can interpose the defences that would be available for them.

On February 27, 1893, Adrian & Vollers executed their notes to the Bank of New Hanover in the sum of $90,000, payable three years after date, bearing four per cent. interest, payable quarterly; and on the same day executed a mortgage to secure the payment of said sum, which was registered June 19, 1893, the day on which said bank closed its doors and ceased to do business.

On June 20th, 1893, said Adrian & Vollers made an assignment to the defendant, E. K. Bryan, in trust for their creditors, conveying all their property, including the property described in said mortgage deed. On June 19th, 1893, an action was duly instituted and pending in the Superior Court of New Hanover County, wherein Gabriel Holmes and J. H. Waters, who sue in behalf of themselves and all other creditors of said bank, are plaintiffs, and the Bank of New Hanover and others are defendants; in which proceeding plaintiff Davis was appointed receiver of said bank.

The present action to foreclose said mortgage was commenced September 12th, 1893, and the defendant E. K. Bryan, as assignee of said mortgagors, filed an answer alleging that said notes and mortgage were made and delivered under an agreement and with intent to hinder and delay the creditors of said Adrian & Vollers, and prays to have said mortgage deed declared void and that plaintiffs convey to defendants, &c. The plaintiffs' demurrer to said answer, was sustained by *Brown, J.*, at April Term, 1894, of New Hanover Superior Court, with judgment of foreclosure in favor of plaintiff, and defendants appealed.

*Messrs. George Rountree* and *E. S. Martin,* for plaintiffs.

*Mr. D. L. Russell,* for defendants (appellants).

BANK *v.* ADRIAN.

FAIRCLOTH, C. J.: It is conceded that ordinarily a court of equity will not interfere between parties to a covinous agreement but will leave them to their strict legal remedies; also, as it has been held that either party *in pari delicto* may by complaint, answer or proof, bring to the attention of the Court any fraudulent transaction to prevent the other from recovering the fruits of such transaction. *Turner* v. *Eford*, 5 Jones Eq., 106, and subsequent cases. Our view is that in such cases a court of equity will stay its hand and leave the parties where they are to exercise their rights as they may be permitted in a court of law. As no equity to either party can arise out of an inequitable and illegal agreement, we fail to see how this Court, in the exercise of its equitable jurisdiction, can aid either party to such dealings. It is a Court of conscience and, within the scope of its powers, will be governed by its own rules. We are not aware of any decision of this Court in which it is held that it is moved or restrained by the Statute of Frauds. *Code*, Sects. 1545, 1546. It is true that in some respects equity follows the law, but never to the extent of aiding in the consummation of an illegal, immoral or fraudulent contract. Lord Kenyon once said: "It is safest to preserve the ancient landmarks of the law," and PEARSON, C. J., said, "If the dividing line between law and equity be destroyed the science of law will be in utter confusion, and no one will be able to see his way." *Turner* v. *Eford*, 5 Jones Eq., 106, was a bill to compel a conveyance on a parol trust, but it appeared that the agreement was fraudulent and the Court declined interfering to compel a conveyance of the legal title.

In *Triplett* v. *Witherspoon*, 74 N. C., 475, the Court said: "Equity will not interfere to set up any transaction founded in fraud; certainly not against a purchaser for value, but will leave the parties to their legal rights."

In *Ellington* v. *Currie*, 5 Ired. Eq., 21, upon a bill to avoid a deed made to defraud creditors the Court said: "Equity will not interfere with the operation of the statute at the instance of either party to a fraudulent conveyance."

In *York* v. *Merritt*, 77 N. C., 213, the action was by the grantee against the grantor for possession of the land conveyed to defraud creditors. The Court said, "When the parties have united in a transaction to defraud another or others, or the public, or the due administration of justice, or which is against public policy or *contra bonos mores*, the Courts will not enforce it against either party." Again in the same case, 80 N. C., 285, 290, it was held "That the plaintiff could recover (meaning in a court of law) as they were *in pari delicto* and this Court (Equity) in the exercise of its equitable jurisdiction, cannot interfere to give relief."

*State* v. *Bevers*, 86 N. C., 588, was a case in which defendant perpetrated a fraud on the State by purchasing land which he knew had been previously granted, and in the opinion RUFFIN, J., said, on page 592, "There is no principle better established than that it is the duty of every court to withdraw its countenance from every contract or other act, the direct object or probable tendency of which is injurious to good morals or contrary to public policy." "No Court will lend assistance to one who founds his cause of action upon an illegal act, to which he was himself a party. As soon as the Court perceives that the action proceeds *ex turpi causa* and that the plaintiff's hands are polluted, it withholds its aid—not out of any consideration for the defendant, but because it will not, on the score of example and public policy, give countenance to such a plaintiff."

In *Brookover* v. *Hurst*, 1 Met., 665, (Ky.) the Court held, " A court of equity will not relieve the mortgagor

from the consequences of his own fraudulent act, nor will it aid the mortgagee in securing him in the enjoyment of the property, when its interpretation is necessary for that purpose. The mortgagee is left to his legal remedies."

In *Creath's Adm'r.* v. *Sims*, 5 Howard U. S., 204, the following explicit language is used : " The following principles of equity jurisprudence may be affirmed to be without exception : Whosoever would seek admission into a court of equity must come with clean hands ; such a court will never interfere in opposition to conscience or good faith. A court of conscience touches nothing that is impure, and the answer to the party is—however unworthy may have been the conduct of your opponent, you are confessedly *in pari delicto ;* and precisely, therefore, in the position in which you have placed yourself, in that position we must leave you."

We think all the cases cited can be reconciled with the foregoing general principles. We assume nothing unfavorable to either party except as it appears from the allegations and admissions.

The complaint alleges that the mortgagors, Adrian & Vollers, are insolvent ; that they executed their notes and mortgage for $90,000 to the plaintiff, payable *three years after date*, bearing interest at *four per cent.* per annum. Would not a few such transactions close the doors of any bank in the State ?

It also alleges that said mortgage was recorded in five several Counties, giving book and page in each, but failing in each instance to state the *day* on which it was registered—alleging also that the mortgagee failed in business in less than four months and that the mortgagors on the day after the Bank failure conveyed all their property to defendant E. K. Bryan in trust for their creditors.

Now do not these badges of fraud disclosed in the com-

plaint, with the positive allegations of fraud found in the answer, and admitted by the plaintiff for the purpose of this action, coupled with the secret existence of the mortgage nearly four months and until the mortgagee itself is found to be insolvent, all subject to be explained and obviated of course by either party, present a question, to-wit, the intent of the parties in the execution of the notes and mortgage proper to be heard by a jury upon the proofs?

But it is urged that the creditors of Adrian & Vollers are not parties to this action and their rights cannot be considered. We answer that their trustee, E. K. Bryan, is here resisting plaintiff's claim. But again, he is a subsequent purchaser with notice, and that the Stat. of Eliz., Sec. 13 and 27, postpones his to the plaintiff's claim. We answer that those are legal questions to be tried by a Court of law and a jury upon the evidence, specially as to the intentions of the parties, and that a Court of equity is not concerned therewith, and will not extend its aid to either party, but leave each in the full exercise of his legal rights as he may be advised. Then, in a case like the present, in which one party alleges fraud and the other admits it, this Court is asked by each party for equitable relief, but for reasons already stated we can not extend it to either party. The demurrer is overruled and the cause remanded.

Judgment Reversed.

AVERY, J. (dissenting): It is the universal rule, to which the search to find an exception in cases adjudicated in our own Court or elsewhere, will be in vain, that the grantor in a fraudulent deed, whether it be absolute in form or a mortgage, is not allowed in courts of law or equity to impeach his own conveyance for covinous conduct, in which he has been a participant and has been equally guilty. Such deeds are declared to be good *inter*

*partes* in the sense that neither can ask to set them aside for fraud, in equity, because of the necessity, as a general rule, of disclosing his own turpitude, and in law, because the grantor is estopped to impeach his own deed. This proposition is supported by a consensus of opinion in all courts that administer the principles of law and equity as derived from England. *Brady* v. *Ellison*, 2 Haywood, 348; *Vick* v. *Flowers*, 1 Murphy, 321; *Jackson* v. *Marshall*, 1 Murp., 323; *Pinckston* v. *Brown*, 3 Jones Eq., 494; *Powell* v. *Ivey*, 88 N. C., 256; *York* v. *Merritt*, 77 N. C., 213; *Same* v. *Same*, 80 N. C., 285; *Westfall* v. *Jones*, 23 Barb., 9; *Brookover* v. *Hurd*, 1 Metcalf (Ky.) 665; *Miller* v. *Markle*, 21 Ill., 152; Bispham Eq., Sec. 244; *Swan* v. *Scott*, 1 Serg. & R., 155; *Evans* v. *Dravo*, 12 Harris, ——; *Williams* v. *Williams*, 10 Casey, 312.

In the case of *York* v. *Merritt*, *supra*, at page 290, the Court say: "They are *in pari delicto* and this Court in the exercise of its *equitable* jurisdiction cannot interfere to give relief." That was an action brought by the plaintiff for the possession of land, where the defendant sought to set aside the deed on the ground that it was intended as a mortgage, but was executed to defraud the defendant's creditors. The Court said (page 289): "If the intent of the parties in making the deed was to defraud the creditors of the defendant, it would make no difference whether the deed was intended as a mortgage or an absolute conveyance." In the case of *State* v. *Bevers*, 86 N. C., 588, this Court announced the general principle that where a plaintiff alleges an equity that entitles him to relief, without disclosing any turpitude on his part, then, *prima facie*, he is entitled to recover; but where it becomes necessary to state, as a part of his cause of action, that it originates in or is dependent upon the enforcement by the Court of an illegal or fraudulent contract the maxim *ex turpi causa non*

*oritur actio* applies, and the Court withholds its aid. Bishpam's Eq., Sec. 248; *Bonesteel* v. *Sullivan*, 104 Pa., 9 ; *Gill* v. *Henry*, 95 Pa., 388 ; Bigelow on Fraud, p. 206 ; *Harris* v. *Leador*, Cro. James, 270 ; *Findlay* v. *Cooley*, 1 Blackf., 262.

Bigelow, in his work on fraud, pages 206 & 207, says : "And the test, whether a demand connected with an illegal transaction is capable of being enforced has often been said to be, whether *the plaintiff requires the aid* of the *illegal transaction* to establish his case. If the plaintiff cannot open his case without showing that he has broken the law, the Court will not assist him. If, on the contrary the plaintiff can establish his (*prima facie*) case without showing the illegality of the acts of the parties, he can recover. There is however, according to other Courts, a marked distinction between executed and executory contracts of a fraudulent character, where both parties are guilty. The principle is the same that the Courts will not lend their aid. The executed contract must therefore stand executed, becaue the Courts will not interfere ; while the executory contract must fall for the same reason."

" By common law (says Waite, in his work on fraudulent conveyances, Sec. 429, p. 593) no person is permitted to take advantage of his own wrong. In such cases the doctrine *in pari delicto* applies and where property has been fraudulently conveyed to a grantee he will be permitted to retain it as against the grantor, not from any merit of his own but because the law will not lend its aid to a party seeking to set aside his own fraudulent act. So equity will not decree a specific performance of an agreement by a fraudulent grantee to reconvey the property to the debtor."

In *Williams* v. *Williams, supra*, it was held that " in a suit upon a mortgage against the administratrix of the mortgagor, the latter will not be permitted to set up as a

defence that the mortgage was given with the fraudulent intent of covering the property from creditors in case of embarrassment of either of the parties to it."

The doctrine, when fully and properly stated, is that whenever it becomes necessary for either of the parties to an executed cenveyance to invoke the aid of a court of equity on the ground that it was executed for a' fraudulent purpose, in which it appears both were equally guilty participants, the Court will refuse the aid asked and will leave the parties in the same position as to the enforcement of their rights that they would have occupied had there been no disclosure of the fraud. In our case had not the defendant set up the fraud and asked the interposition of the Court on that ground, the plaintiff having established, as Bigelow says, his *prima facie* case without disclosing his guilt, was entitled to recover. To leave the Bank as it stood before the court prior to the introduction of the fraudulent transaction, was to concede its right to a decree of foreclosure. The principle is substantially stated in two cases relied upon by the plaintiffs counsel on the argument. *Bonesteel* v. *Sullivan, supra*, and *Gill* v. *Henry*, 95 Pa. St., 388. In the former case (*Bonesteel* v. *Sullivan*) the Court held that, the deed being good *inter partes*, a mortgagor could not defeat the recovery of the mortgage in a bill for foreclosure by disclaiming for the first time in the answer a common intent of both parties to defraud other creditors of the mortgagor. In the case of *Gill* v. *Henry*, *supra*, the Court declared that upon the same principle the mortgagor, where the mortgagee did not in his bill for foreclosure disclose the fraud, could not set up or prove on the trial an agreement between the parties, like that relied on in the answer here, that the deed should be withheld from registration in order to defraud other creditors.

"The person who attempts to cheat others has no right 116—35

to complain if he himself is cheated." *Waite, supra,* p. 207. Adrian & Vollers executed a contract upon which the plaintiff has shown *prima facie* its right to the judgment demanded. The defence attempted to be set up by the assignee, (who, as will presently appear, stands in the same relation to the plaintiffs as the assignor) involves the first averment of the turpitude, out of which no right can arise in law or equity. As it does not lie in his mouth, after taking with notice of the mortgage, to avail himself of such a plea, the Court must deal with the cause as though the fraud had never been mentioned. When Bryan, the assignee seeks to avoid the deed by showing its fraudulent character, he is confronted by the rule laid down in *Ellington* v. *Currie,* 3 Neb. Eq., 31, that a Court of Equity allows only creditors and not "the party or those claiming under him" to impeach them under 13 Eliz. It is plain that, unless the assignee has some right conferred by statute, he stands both in a Court of Law and a Court of Equity in the shoes of his grantor or assignor, and is estopped both in law and in equity as effectually from impeaching the deed of his assignor as his own prior deed for the same property.

The case of *Turner* v. *Eford,* relied upon by the defendant's counsel, fails to come within the principle which is decisive of that at bar, for the reason that there the heirs of Turner, who filed a bill to enjoin the execution of a writ of possession, claimed under no deed; but the heirs-at-law of Eford had recovered upon the conveyance to their ancestor in an action of ejectment. They were not precluded as are Adrian & Vollers and their assignee by their own deed or their answer, from setting up and proving the fraud. Having the right to avail themselves of that defence, when the allegations of their answer were admitted, the Court of Equity left the parties as they

stood—the defendants with judgment for possession and a writ in the hands of the Sheriff. The confusion that seems to have arisen about the application of the principle to actions for foreclosure, seems to be due to the erroneous idea that either party forfeits his claim to relief by simply going into equity, when in reality a party is entitled to demand any judgment in law or equity to which he can establish his right without relying upon the fraud as a ground of the relief sought.

The only remaining question is whether he is at liberty to attack as a purchaser under 27 Elizabeth. The statute (*Code*, Secs. 1545 and 1546) which are substantially the same as 13 and 27 Elizabeth, except that the Act of 1860 so amended the latter as to limit its operation to purchasers both for full value and without notice, give to creditors of bargainors or mortgagors, and to such purchasers of their interests, but not to the bargainors or mortgagors themselves, the right to impeach conveyances on the ground that they were executed to hinder, delay or defeat or defraud creditors or such purchasers. The controversy is narrowed down therefore to the question whether E. K. Bryan, the assignee, is a purchaser for value and without notice of the claim of the plaintiff under the older conveyance. None of the creditors are parties, though they might have been made or might have asked to be made defendants in the cause. It may be true that the rule defining the relative rights of mortgagor, mortgagee and trustee or assignee of the equity of redemption, have been somewhat modified by recent decisions of this Court. *Wallace* v. *Cohen*, 111 N. C., 103; *Southerland* v. *Fremont*, 107 N. C., 565; *Cowen* v. *Witherow*, 112 N. C., 736. But the doctrine that such an assignee in a general deed to secure creditors is "a purchaser within 13 and 27 Elizabeth" and takes subject only to such equities as attached to or bound land in the hands

of the debtor, has remained undisturbed since it was first formally announced. *Potts* v. *Blackwell*, 3 Jones Eq., 449 ; *Small* v. *Small*, 74 N. C.; 16 ; *Wallace* v. *Cohen* and *Southerland* v. *Fremont*, *supra* ; *Brem* v. *Lockhart*, 93 N. C., 191 ; *Branch* v. *Griffin*, 99 N. C., 173. If Bryan is to be deemed a purchaser subject only to the restriction mentioned, what superior equities to those of the creditors, whom he represents, are shown to have attached before the conveyance to him ? The averments of the answer being admitted by the demurrer, the Bank cannot be deemed to have acquired any equitable rights either as against creditors or such purchasers by the covinous conspiracy to give to Adrian & Vollers a false credit and then to deprive those, who should fall into the trap, of the right to subject the property, which was the basis of the credit extended to them. Some more rigid rule than any founded upon the benign principles of equity must be invoked in order to postpone the claims of these creditors, represented by Bryan, to those of the plaintiff, admitted to have been acquired, if at all, by a conveyance intended by both parties to perpetuate a gross fraud upon the rights of subsequent purchasers as well as subsequent creditors.

But however reprehensible in any aspect, and violative of the rights of the creditors represented by Bryan, the admitted covinous arrangement between the Bank and the defendants Adrian & Vollers may have been, we find a difficulty that seems insuperable, in the way of conceding to him as subsequent assignee the right to attack the mortgage deed. Bryan admits in his answer that it was " registered on the 19th day of June, 1893, and that the deed of assignment is correctly set out in the complaint, where plaintiff alleges that it bears date June 20, 1893." The mortgage deed having been registered on the day before the deed of assignment was executed, Bryan as assignee

BANK v. ADRIAN.

took with constructive notice of it and of everything contained in it. *Robinson* v. *Willoughby*, 70 N. C., 358; *Parker* v. *Banks*, 79 N. C., 480; *Wharton* v. *Moore*, 84 N. C., 479, 2 Pom. Eq. Jur., Sec. 692; *Ibid*, Sec. 655 (4). In *Triplett* v. *Witherspoon*, 70 N. C., 589, PEARSON, C. J., cites *Hiatt* v. *Wade*, 8 Ired., 380, and quotes from the opinion of RUFFIN, C. J., as follows: "The statute, 27 Eliza., enacts that conveyances of land, made with intent to defraud purchasers shall, only as against purchasers for good consideration, be void. Under that act it was of course held that notice of the fraudulent deed did not impeach the title of the purchaser, because the bad faith of the deed vitiated it, and with the notice of the deed the purchaser had also notice of the fraud. But the legislature thought proper in 1840 to alter the law and declare that no person shall be deemed a purchaser within the meaning of the former act, unless he purchase the land for full value thereof without notice at the time of his purchase of the conveyance alleged by him to be fraudulent." *Triplett* v. *Witherspoon*, 74 N. C., 475.

The distinction which the learned counsel for the defendant attempts to draw between the rights of the assignee in a court of law and in a court of equity, has not been recognized by this Court. The rule as laid down in a court of equity in *Ellington* v. *Currie*, *supra*, and as applying to cases where such relief is asked under the Code practice in *York* v. *Merritt*, *supra*, is, that not only are parties estopped from attacking their own deeds as fraudulent, but those in privity or holding under them, which is a synonymous expression, are also as fully concluded as the grantor. Bryan, assignee, claims title to the equity of redemption by virtue of the deed from Adrian & Vollers, and therefore comes within the general rule in courts of law and equity, unless such deeds are declared void as to him by the statute

( *Code*, Sec. 1546 ). We have seen that he is not such a purchaser as can claim the right to attack under that section. Having taken "before and at the time of purchase" with notice of the mortgage deed, it is clear then that Bryan is not at liberty to impeach it.

The other creditors secured by the assignment not being parties, we think there was no error in granting the decree of foreclosure. Why they have not been made parties to this cause, or have not instituted another suit, we are not informed. Unless the admission of the allegations of the answer by demurrer was merely a *pro forma* act, intended to raise the question, it would seem that the mortgage deed might have been successfully assailed by them, either as defendants in this or plaintiffs in an independent action.