HARRIET SMALL, Adm'x., *v.* CHARLES W. SMALL and others.

Where a guardian purchased his ward's land at a sale by the Clerk and
Master, in a petition for partition fi ed by himself, and received a
deed therefor, he holds the legal title to said land, subject to the
equity of the wards, of his paying the purchase money, as a condition
precedent to his becoming the owner of it.

The creditor who takes a deed of trust, stands in the shoes of the
debtor, and takes subject to any equity binding the lands in the
hands of the debtor.

This was a SPECIAL PROCEEDING, commenced in the Probate
Court of PERQUIMANS county, where issues of fact arising
upon the pleadings, the case was transferred to the Superior
Court, and tried before *Furr*, J., at Fall Term, 1875, upon
the following statement of facts:

Before 1856, William Small, the plaintiff's intestate, had
married the plaintiff, who was the mother of the defendants,
Wilson, William and Joseph Mardre, by a former marriage,
and had been appointed their guardian by the proper court.
All were infants, Joseph being also a lunatic. These infants
owned as tenants in common a tract of land hereinafter known
as the "White House" tract.

At the Fall Term, 1856, of PERQUIMANS Court of Equity, the said guardian, in his capacity as guardian, filed his petition to sell the said tract of land for partition. A sale was ordered by the court, and after notice the sale was made by the Clerk and Master at public bidding, when the same was bid off by the guardian, the plaintiff's intestate, at the price of $1,060, who gave his bonds therefor, with good sureties, payable to the Clerk and Master according to the order of sale. The Clerk and Master reported the sale, the purchase by the guardian and the execution by him of his notes, with good surety, to Spring Term of said court.

At Spring Term, 1857, is the following entry upon the Equity trial docket:

"The report of the Master in this case is filed, and it appearing therefrom that the real estate, in the proceeding mentioned, sold for a fair price, it is thereupon *ordered* that the said sale be confirmed; that the notes be paid over to the guardian, and that the Clerk and Master make title to the purchaser; and that the Master be allowed $25 for his services." This was the last order in the court.

Thereupon the Clerk and Master surrendered to the guardian his notes given for the purchase of the land, and on the 1st of January, 1858, executed a deed conveying the land to the guardian, who had taken possession of the same on the day of sale, and held it in continual possession and cultivation until his death in 1873.

In his returns as guardian, made to the February Term, 1857, of the County Court of Perquimans, he charges himself in favor of each of his wards, with the sum of $331, their respective shares of the proceeds of sale of the land.

Wilson L. Mardre attained the age of twenty-one years in the fall of 1860, and no payment was made to him by his guardian until after the war.

William Mardre became of age in 1865. Joseph Mardre.

2

has been declared *non compos mentis* by a jury, and the defendant, Wilson, is his guardian in lunacy.

At Spring Term, 1874, the defendants Mardre, instituted suit upon the bond of their guardian, and at Fall Term, 1874, recovered judgment, as follows: William Mardre, in the sum of 2,606.71, with interest on $1,785.42 from September 1st, 1874, till paid. W. L. Mardre, in l is own right in the sum of $1,227.04, with interest on $674.24 from September 1st, 1874, until paid. Joseph D. Mardre, by W. L. Mardre, his guardian, in the sum of $1,389, with interest from May, 1, 1874, until paid. These judgmen's included the sums due each as the purchase money of the land.

On the 29th of October, 1867, the guardian, William Small, and the plaintiff, his wife, conveyed the said land to the defendant, P. H. Small, his son; and on the —— day of ——, following, he filed his petition in bankruptcy and thereafter was duly discharged in the Bankrupt Court on the 8th day of February, 1872. William Small and his sons, P. H. Small and C. W. Small, conveyed the land in trust to Elliott Brothers, to secure a debt due by William Small, deceased, intestate and insolvent, and in possession of said land in 1873.

The sureties upon the guardian bond and the sureties to the notes, executed by Small, to secure the purchase money for the tract of land were insolvent at the close of the war, but good when given.

On the 15th April, 1874, P. H. Small conveyed the said land in trust to the defendant T. G. Skinner, to secure a debt due by him to Ginkin & Co. Neither Elliott nor Skinner had any knowledge of fraud in the transfer from William Small to P. H. Small. The debts recited in those trusts are *bona fide* and the Ginkin debt was assigned before due.

The plaintiff brought this action against the heirs at law of William Small to subject said land, as assets to the payment of his debts. The defendants, Mardre, Elliott Brothers, and

Skinner by leave of the Probate Court filed their pleas, setting up their respective rights in the premises.

The Probate Court not having jurisdiction to try the issues raised by the pleadings, the cause was transferred to the Superior Court.

Upon consideration of the facts agreed, his Honor adjudged that the land be sold by a commissioner named, and that the defendants Mardre, were entitled to have the general assets of the intestate's estate applied to their judgments with the other indebtedness of the intestate, and that they had a lien upon the land and upon the proceeds of its sale, to satisfy any part of the principal or interest of the unpaid sum bid by the intestate after the *pro rata* payment of the intestate's assets, and the court directed an account for that purpose. The defendants, Elliott Brothers and Skinner, moved the court to dismiss the application of the Mardre's on the ground that the decree of the court at Spring Term 1857, could not be collaterally impeached in this proceeding, and for other reasons.

The motion was overruled by the court, whereupon the defendants Skinner and Elliott Brothers appealed.

*Busbee & Busbee, Smith & Strong* and *Batchelor*, for the appellants.

*Gilliam & Pruden,* contra.

PEARSON, C. J. In the argument before us, the counsel for " the Madres " did not impeach the decree ordering a sale of the land for partition, or draw in question the validity of the deed executed by the Clerk and Master, so far as it had the effect to pass the legal title to William Small; but he put the equity of his clients to have a preference over the other creditors of Small in respect to the fund arising from the sale of the land, on the ground of the fiduciary relation of Small as their guardian. He filed the petition to have the land sold for partition as their guardian, and in that capacity procured

every order in the proceeding to be made, the result of which was, whether upon a preconceived intention on his part to defraud his wards out of a tract of land that adjoined his own land, or as a mere incident of his subsequent insolvency, is an immaterial question, for so it is, Small, the guardian has procured the legal title of his wards land without paying for it.

The question is, could he in conscience rely upon the legal title thus acquired by his own acting and doing, without any agency or concurrence on the part of his wards to deprive them of their land, or was he not bound in equity, when he found he was not able to pay for the land, either to reconvey the land, or to give them a priority in respect to it over his general creditors ?

The Constitution, in its provisions in regard to homesteads, refuses to recognize a vendee as the owner of lands which he has not paid for, as against the vendor, although he may have executed a deed as against the general creditors of the vendee or a subsequent purchaser, with notice of the fact that the land has not been paid for. Our courts acts upon the principle that where the parties are " at arms length " and the vendor, instead of retaining the title to secure the purchase money, choses to make title and trust the vendee for the money, it becomes a mere personal debt, and the vendor having, of his own folly, let go his security, must be content to stand on the same footing with other persons.

But our case does not rest upon that doctrine, and is put on a plain equity arising out of the fiduciary character of Small as guardian. He and his wards were not parties acting " at arms length." He was the only actor on the stage and the whole proceeding was managed by him ; so as against his wards, although he had acquired the legal title, still he held it subject to their equity of his paying for the land as a condition precedent to his becoming the owner of it.

Granting this position, it was contended that the equity of the Mardres was barred by the fact that Small had held ad-

verse possession of the land, under the deed of the Clerk and Master, for seven years; the question intended to be presented depended upon whether in counting time it began *t the date of the deed.* or at the time when the wards respectively became of age. The idea that a guardian could hold adversely to his ward before the ward became of age, was so absurd that this position was abandoned.

3. It is settled in this State, that a deed in trust to secure creditors is not a voluntary conveyance within the meaning of the statute of Elizabeth ; but the counsel of the appellants did not refer to any case or give any reason in support of the position that a creditor who takes a deed of trust conveying a tract of land, to secure an existing debt, stands in a better condition than the debtor in regard to an equity which has attached to the land in the hands of the debtor. The creditor who takes a deed of trust is not out of pocket one cent, so he stands in the shoes of the debtor and takes subject to any equity binding the land in the hands of the debtor.

This is too plain for discussion, and the facts set out do not raise what would have been an interesting question, viz : is one who takes a deed to secure advancements, to be afterwards made subject to an equity of which he had no notice ?

There is no error.

PER CURIAM.                     Decree below confirmed.