T. J. SOUTHERLAND et al. v. S. L. FREMONT and wife.

*Negotiable Notes—Endorsement in Blank— Guarantor—Surety— Proof of Suretyship — Mortgage — Indemnity — Release — Equity—Pre-existing Debts—Notice.*

1. Endorsements in blank upon negotiable instrument are presumed to be made cotemporaneous with the execution of such instrument.

2. Where an endorsee may be held to be also a guarantor, there is no question that, as between the parties, the *prima facie* contract of guaranty arising from such endorsement may be rebutted and the true relationship shown.

3. The agreement of a blank endorser of another's obligation, showing what liability he intended to assume, may, at least as between the parties and those holding with notice, be proved by parol.

4. Where it appeared that a negotiable instrument was signed by three persons other than the principal obligor, and it also appeared from a writing executed some time thereafter by one to indemnify the other two that they (the other two) "signed as co-sureties" of the third: *Held*, that the character of suretyship in which all three signed was sufficiently established.

5. Where the trustee of a mortgage made to indemnify him and another (his co-surety) against loss by a third executed to the maker a deed of release, without the knowledge of his co-surety, to the lands conveyed in the indemnifying mortgage: *Held*, the action to enforce the mortgage was not postponed until the deed could be set aside in an independent action.

6. The unlawful release or discharge could be avoided either by amendment or by replication.

7. The mortgagee of land conveyed to secure a pre-existing debt is a purchaser for value, under the Statutes of 13 and 27 Elizabeth, but he takes subject to any equity that attached to the property in the hands of the debtor.

8. The implied promise (if any, or if enforceable) of the mortgagee, where the mortgage was made to secure pre-existing indebtedness, that she would postpone until default all other remedies, cannot be allowed to avail to defeat prior equities.

9. When, without notice of an equity, one enters into an indemnifying conveyance to secure an irrevocable liability, such conveyance will prevail over the equity.

This was a CIVIL ACTION, tried at February Term, 1890, of RICHMOND Superior Court, before *Bynum, J.*

The complaint alleged that in August, 1875, the W. & S. Railroad Company gave their note to one J. W. Leak for the sum of $5,750, due twelve months after date, with defendant S. L. Fremont and plaintiffs Wooten & Southerland as sureties, and that on the same day the said company became indebted to R. S. Ledbetter for $2,875, with the same parties as sureties. That Fremont executed to Wooten a mortgage to save him and Southerland harmless on account of their suretyship upon said notes, to the extent of any loss because of the failure of Fremont to pay the proportionate part of the

debt for which he was liable. That the company failed to pay the notes, except some sums named, and both the company and Wooten are utterly insolvent. Fremont also failed to contribute his part of the payment of these notes.

The action was brought for one-half the amount paid by Southerland as surety, and for the foreclosure of the mortgage to ratify this claim. Wooten having died since the commencement of this action, the plaintiff Southerland, in his amended complaint, still further alleged that before his death, to-wit, on the 30th of September, 1882, Wooten, without the knowledge and consent of this plaintiff, executed to Fremont a deed, reciting that the debt secured by the mortgage had been paid, and releasing the premises therein conveyed.

The defendants alleged that the time for payment of said mortgage notes was extended from time to time, without the consent of the surety Southerland, and without Fremont's consent, and that Fremont was thereby released from his liability thereon to the holders and to Wooten & Southerland. That the mortgage referred to in the complaint was without sufficient consideration. That plaintiffs' action is barred by the statute of limitations That the mortgage debt was satisfied and the legal estate vested in Fremont. That the wife of the defendant Fremont, also a defendant, under the belief that the mortgage had been satisfied, took a note and mortgage on the lands described from her husband, to secure a pre-existing indebtedness to her, and for the consideration of a further extension of time thereon.

The defendants contended that the wife of defendant Fremont was a purchaser for value without notice of any equity, and that the plaintiffs must have brought their action to enforce the equity within three years prior to the commencement of this action and to the amendment of his complaint, and within three years after the discovery of the facts, or after they might have been discovered by reasonable diligence.

The following issues were submitted to the jury, to which they responded as follows:

"1. What amount is the said S. L Fremont liable for to T. J. Southerland, by reason of the contract of indemnity by said S. L. Fremont set forth in the complaint? Answer—Nothing.

"2. Was said F. M. Wooten insolvent at the commencement of this action? Answer—Yes.

"3. At what time did said F. M. Wooten become insolvent? Answer—In 1880 or 1881.

"4. Was said railway company insolvent at the commencement of this action? Answer—Yes.

"5. Did said Southerland at any time assent to the release of Wooten to Fremont, or did he have any notice of it at the time of its execution? Answer—No.

"6. When did said Southerland first have actual knowledge of the execution of the release? Answer—At September Term, 1889, of the Superior Court of Richmond County.

"7. What amounts did Southerland pay on the notes set forth in the complaint, and when? Answer— * * * Balance on both notes, to-wit, $2,782.87, he paid some time in 1881.

"8. Were the notes and deed in trust executed by S. L. Fremont as set forth in complaint? Answer—Yes.

"9. Is the plaintiffs' cause of action barred by the statute of limitations? Answer—Yes.

"10. Did Mary E. Fremont purchase the lands for a valuable consideration? Answer—Yes

"11. Did she purchase without notice? Answer—Yes."

The last two issues, 10th and 11th, were tendered by defendants and submitted by the Court after objection by plaintiffs, and plaintiffs excepted.

The other material facts are set out in the opinion.

*Messrs. H. C. Jones* and *C. W. Tillett*, for plaintiffs.

*Messrs. A. Burwell, P. D. Walker* and *J. D. Shaw,* for defendants.

SHEPHERD, J.: His Honor charged the jury, that if they believed the testimony, S. L. Fremont was not liable to the plaintiff by "reason of the contract of indemnity" which is the subject of this action.

Putting aside, for the present, the defences of the statute of limitations and that Mrs. Fremont was a *bona fide* purchaser for value, we will first examine into the correctness of this instruction with reference to the contention of the defendants that the obligation of S. L. Fremont was that of a guarantor, and that he was discharged from any liability thereon because of the *laches* of the plaintiff and other defences peculiar to that species of contract.

1. The bonds executed by the railroad company respectively to Ledbetter and Leak on the 3d of August, 1875, were negotiable instruments, and were endorsed in blank by the plaintiffs F. M. Wooten and S. L. Fremont. It is presumed that the endorsements were contemporaneous with the execution of the bonds. *Tredwell* v. *Blount*, 86 N. C , 33; *Carroll* v. *Weld*, 13 Ill., 682; Daniel Neg. Instruments, 1757; *Cook* v. *Southwick*, 9 Tex., 615.

There is much diversity of opinion as to whether such endorsers are liable as guarantors only. Brandt, in his work on Suretyship and Guaranty, section 147, maintains the affirmative "in the absence of evidence as to the liability intended;" while, on the other hand, Daniel, in his Negotiable Instruments, *supra*, says that "the very opposite presumption arises." See also 1 Parsons Cont., 206, cited, with approval, in *Baker* v. *Robinson*, 63 N. C., 191. The latter view is further sustained in *Daniel* v. *McRae*, 2 Hawks, 590; *Dawson* v. *Pettway*, 4 D. & B., 396, and other cases in our reports.

We do not see how *Crawford* v. *Lytle*, 70 N. C., 385, cited by the defendants, conflicts with the foregoing authorities, as, in that case, the endorsement was *subsequent* to the making of the note.

Even where the contrary is held, there is no question that, as between the parties, the *prima facie* contract of guaranty arising from such an endorsement may be rebutted and the true relationship shown. *Baker* v. *Robinson, supra.*

"It is well settled," says Brandt, *supra*, section 153, "that the agreement upon which the blank endorser of another's obligation signed, and the liability which he intended to assume, may (at least between the original parties, or those parties and a holder with notice) be shown by parol evidence, and he will be held only according to such agreement and intention."

It is difficult to conceive how the real agreement and intention in the present case could have been more clearly manifested than by the solemn declaration of Fremont himself under his hand and seal. This is contained in a deed of trust executed by him to F. M. Wooten on the 31st of May, 1876. This instrument, after reciting the bonds above mentioned as "being signed by the said S. L. Fremont, F. M. Wooten and Thomas J. Southerland as *co-sureties,*" proceeds as follows:

"And, whereas, the said S. L. Fremont is desirous to indemnify and save harmless the said Francis M. Wooten and Thomas J. Southerland from any loss or damage they, or either of them, may sustain by reason of any failure on the part of said Fremont to pay the proportion of said debt of the said railway company for which said Fremont would be liable as between him and the said Wooten and the said Southerland, as *co-sureties* with them, in the event the said railway company should fail to pay the said debts, or any part thereof. Now this indenture witnesseth," &c.

The deed conveys certain land situated in Richmond County, in this State, and was duly registered. The condition is, that if the said railroad company, the maker of the bonds, "shall fail to pay its two notes due, the one to J. W. Leak and the other to R. S. Ledbetter, as aforesaid, or any part of said notes, so that the said *sureties* on said notes shall be compelled to pay said notes, or any part thereof, then, if the said S. L. Fremont shall indemnify and save harmless the said F. M. Wooten and the said T. J. Southerland from any loss or damage they, or either of them, shall sustain by reason of any failure on the part of said Fremont to pay the proportion of the railway company for which he would be liable, to said Wooten and Southerland, by reason of being a co-surety with them on said notes  *  *  *  then this deed shall be void,  *  *  *  otherwise to remain in full force and effect."

S. L. Fremont, then, being a co-surety, and not a guaran-- tor, it must follow that the defences resting upon the latter theory must fail, and the plaintiff, having paid the large balance due upon the bonds, will be entitled to recover unless some legal barrier is interposed by the defendants.

2. We will next consider the ruling of the Court below upon the statute of limitations.

The purpose of this action being the subjection of the land by reason of the non-performance of the covenant of indemnity contained in the deed of trust, and the statutory period of ten years not having elapsed, it would ordinarily follow that the action would not be barred. *Capeheart* v. *Dettrick*, 91 N. C., 344. It appears that, on the 30th of September, 1882, Wooten, the trustee, without the knowledge of the plaintiff, executed a deed of release to Fremont, which instrument had been registered at the time of the execution of the mortgage to Mrs Fremont. The conditions of the trust deed, so far as the plaintiff is concerned, have never been performed. It is insisted that no action to enforce the

trust can be maintained until this deed of release is set aside, and that the right to have it set aside constitutes an independent cause of action which is barred in three years. It is also contended that the amendment to the complaint, with reference to the unauthorized release, did not relate to the commencement of the action. We do not concur in either of these views. Under the circumstances of this case, the impeachment of the unlawful discharge was only incident to the cause of action. The unlawful discharge might have been avoided either by replication or by the amendment of the complaint. In either form, the pleading would have related to the institution of the suit. The case of *Ely* v. *Early*, 94 N. C., 1, bears such a striking analogy to ours, and the principles there laid down so plainly dispose of this contention of the defendant, that we think it unnecessary to further pursue the discussion upon this point.

· As between the parties, it cannot be denied that the deed of release would have been set aside and that a strong equity was attached to the land in favor of the plaintiff. He has not lost this equity unless Mrs. Fremont is a *bona fide* purchaser, and here we are met with a question which has caused us much careful consideration.

3. There is no doubt that a mortgagee or trustee of land conveyed to secure a pre-existing debt or liability is a purchaser for value, within the Statutes of 13 and 27 Elizabeth; but it would seem, says PEARSON, J., in *Potts* v. *Blackwell*, 3 Jones' Eq., 449, "that they take subject to any equity that attached to the property in the hands of the debtor, and cannot discharge themselves from it on the ground of being purchasers without notice, in like manner as a purchaser at execution sale takes subject to any equity against the debtor without reference to the question of notice." This doctrine is also declared in *Small* v. *Small*, 74 N. C., 16, where it is said that "the creditor who takes a deed of trust is not out of pocket one cent; so he stands in the shoes of the debtor,

and takes subject to any equity binding the land in the hands of the debtor." This is further sustained in *Day* v. *Day*, 84 N. C., 408, and other cases, and cannot now be regarded as an open question in this State. It is argued, however, that, although the mortgage of Fremont to his wife was given to secure a pre-existing liability, it is, nevertheless, unaffected by the foregoing principles, because, by its acceptance, the law implied an agreement on the part of Mrs. Fremont to suspend, until default, any other remedies which she might have had in respect to her liability as surety to her husband on the Buell debt. This implied promise is relied upon as a *new consideration* to defeat the important equity of the plaintiff. Conceding the principle declared in *Harshaw* v. *McKesson*, 65 N. C., 688, that the taking of a mortgage for an existing indebtedness implies a promise to suspend until default all personal remedies against the mortgagor, let us inquire what remedies Mrs. Fremont had, and whether they were, in fact, affected by her acceptance of the mortgage. Although she had not paid the debts for which she was surety, she could have maintained an action in the nature of a bill *quia timet* to compel her husband, the principal, to discharge the indebtedness (2 Story Eq. Juris., § 849; *Burroughs* v. *McNeill*, 2 Dev. & Bat. Eq., 297); or she might have required Buell, the assignee, to bring suit against the principal by requesting him, in writing, so to do, as is provided in *The Code*, § 2097. These were her remedies. Were they suspended by the acceptance of the mortgage? We think not, and for the following reasons:

*First*—The mortgage from which the promise is to be implied does not contain the slightest reference to the Buell debt, but is made to secure what purports to be the *absolute* indebtedness of Fremont to his wife. There being no apparent connection between the transactions, it is plain that no promise to suspend the remedies mentioned can be

implied, and it is doubtful, in the absence of fraud or mistake, whether equity would, against the consent of the parties, allow the instrument to be corrected.

*Second*—Suppose, however, that the correction had been made, or that parol evidence had been admitted (as was done) to show the real agreement, would that agreement have the effect contended for? We are of the opinion that it would not. There would then be no absolute debt, nor any particular time for foreclosure, but simply a mortgage to indemnify against any loss which Mrs. Fremont might, in the indefinite future, sustain. It would seem that an indemnity against an apprehended loss would not imply an agreement to forbear the taking of steps to prevent the loss from occurring. We hardly think that the principle of *Harshaw* v. *McKesson, supra,* applies, and we are not disposed to extend the doctrine of that case beyond the limits of actual precedent.

*Third*—The alleged implied agreement is executory. If the land mortgaged was subject to equities which would render it valueless as a security, there would be no consideration, and, therefore, such an agreement could not be enforced. Even if there had been an express covenant not to sue, based upon such a consideration, it would be of no avail, as equity would relieve against the covenant. "It is, moreover, plain that a release by a creditor will not entitle him as a purchaser, unless it is so worded as to take effect at once, for if it rests merely in the covenant, and the assignor's title fails, equity will give relief by declaring the covenant invalid. Such a covenanter is, at most, in the situation of a purchaser who has given a bond, or other security, instead of paying." *Ludwig* v. *Highly,* 5 Barr., 132; *Bassett* v. *Norsworthy,* 2 White & Tudor's L. C., Par. 1, 4 Am. Edition, notes 88. If, however, one without notice has entered into an irrevocable obligation, such as becoming bail for another, or the endorsement of negotiable paper

which has been transferred before maturity or notice, there would be such a valuable consideration as would prevail over prior equities. *Freeman* v. *Denning*, 3 Sand. Ch., 358. If we are correct in the above reasoning, it follows that Mrs. Fremont was under no binding obligation to forbear the prosecution of any remedies which she might have possessed against her husband, and that there was no consideration for the mortgage other than the pre-existing liability as surety.

It may be said that the alleged agreement has been partly executed, inasmuch as Mrs. Fremont did not, in fact, prosecute her said remedies. We are of the opinion that such inaction alone, even in pursuance of a valid agreement, would not bar the plaintiffs' equity. It is not to be tolerated, say the text-writers, that what equitably belongs to one shall be given to another who has parted with nothing, and whose condition has not been altered for the worse. To preclude the equities of the plaintiffs, it must not only be shown that Mrs. Fremont took without notice and upon an agreement to forbear, but that by reason of such contract of forbearance she has sustained some real loss. Executory promises of this character are recognized as sufficient considerations to support legal obligations, as illustrated in the case of *Bank* v. *Bridgers*, 98 N. C., 67, but they cannot be allowed to defeat equities that have attached to land, unless they have been "fully completed" (*Todd* v. *Outlaw*, 79 N. C., 243); and a mere part performance before notice cannot have this effect, if the owner of the equity can restore the *status quo*, or make proper compensation. So in the case of the purchase of land, the part payment before notice does not defeat the equity. The purchaser is protected only *pro tanto*. "If he has paid the whole, he will be protected for the whole; if part only, he will be protected for so much; if he has paid nothing, he is entitled to no protection." *Bassett* v. *Norsworthy*, *supra*, note 79. If the simple acceptance of a mort-

gage or trust deed to secure an existing debt or liability is to have the effect contended for, the distinction between present and pre-existing indebtedness, as to prior equities, will be practically abolished, since it rarely happens that a mortgage or trust to secure a pre-existing liability does not provide for foreclosure at a date subsequent to the actual maturity of the obligation as fixed by the original contract. A Court of Equity cannot attach such grave results to a mere technical consideration, and will not permit it to defeat an equity in favor of one whose real condition has not been substantially altered, and who has suffered no loss. There must be a new trial.

New trial.