LESLIE WEIL AND LIONEL WEIL, TRADING AS H. WEIL & BROTHERS, v. W. B. HERRING, BETTY E. HERRING, AND R. A. HERRING.

(Filed 19 September, 1934.)

1. **Fraudulent Conveyances A b: Chattel Mortgages G b—Transfer of property by mortgagor in payment of pre-existing debt held valid as to mortgagee in unregistered mortgage who has no equity.**

   While the sale of property to a creditor in possession in partial payment of a preëxisting debt is not good as against the equity of a mortgagee having a prior unregistered chattel mortgage against the property, since

the creditor takes the property subject to the equities existing against it in the hands of the debtor, the chattel mortgage in itself creates no equity in favor of the mortgagee therein, and where the mortgagee shows no equity existing in his favor, the creditor takes the property free from the lien of the unregistered chattel mortgage.   C. S., 3311.

**2. Payment B b—**

Where the debtor does not direct the application of the proceeds of sale of his property in the hands of the creditor, the creditor selling the property may in his own judgment apply the proceeds of sale to any one of the debtor's several accounts.

**3. Appeal and Error B b—**

An appeal will be determined in accordance with the theory of trial in the lower court.

SCHENCK, J., took no part in the consideration or decision of this case.

CIVIL ACTION, before *Daniels, J.,* at August Term, 1933, of WAYNE.

On 16 July, 1928, the defendants executed and delivered a negotiable promissory note to H. Weil & Bros. for the sum of $420.00.   This note was not paid, and on 16 June, 1931, Weil brought suit thereon.   The defendants answered, alleging that R. A. Herring signed the note as surety and that the makers, W. B. Herring and wife, Betty Herring, had deposited with Weil eight bales of cotton and requested him to sell the same and apply the proceeds to the payment of said note.   They further allege that Weil sold the cotton and applied the proceeds to other indebtedness of W. B. Herring, and that the proceeds of the sale were more than sufficient to pay the note involved in this litigation with a balance of $62.75, which said defendant sought to recover by way of counterclaim.   The plaintiffs replied to the answer, alleging that W. B. Herring, the owner of the cotton, delivered the same to the plaintiffs to be applied on the general indebtedness of said Herring, and that said plaintiffs so applied said proceeds.

The issue submitted to the jury was as follows:

"Did W. B. Herring direct that the cotton be sold and applied to his indebtedness to the plaintiff without specifying application to the $420.00 note?"

The jury answered the issue "Yes."

Thereupon, the parties agreed upon certain facts, which are as follows:

"1. That on 16 July, 1928, W. B. Herring and wife, Betty Herring, and R. A. Herring executed a note under seal to H. Weil & Brothers for $420.00, being the note referred to in the complaint.

"2. That on 19 January, 1928, for an account extending over several years, W. B. Herring and wife executed a note to Weil & Brothers for $9,605.62, said note being secured by a second or subsequent deed of trust

on land; and said lands were, prior to the fall of 1928, sold under the prior lien or liens, and the proceeds were insufficient to pay off the prior encumbrances, and the said note for $9,605.62 remained unpaid in the fall of 1928. That W. B. Herring and wife were also indebted to Weil Brothers at that time on a note for $500.00, executed 13 April, 1928, upon which was due a balance of more than $150.00.

"3. That on 13 April, 1929, W. B. Herring and wife, Betty E. Herring, executed to Weil Brothers a crop lien on all their crops of cotton and tobacco for the year 1929, on their farm in Sampson County, owned by the *feme* defendant, Betty E. Herring, which crop lien was not to exceed $2,000.

"4. That the defendants, W. B. Herring and wife, Betty E. Herring, executed a second crop lien (unrecorded) on said crop for the same year to the defendant R. A. Herring for the sum of $2,000, which was made subject to the prior lien of the plaintiff H. Weil & Brothers. This crop lien was unrecorded and Weil Brothers had no notice of it.

"5. That during the fall of 1929 the defendants W. B. Herring and wife, Betty Herring, delivered to the plaintiff Weil Brothers eight bales of cotton, produced in 1929, on the lands referred to above, which was stored in the plaintiff's warehouse in Goldsboro, and also delivered to the plaintiff the proceeds of their tobacco sales, and these proceeds from the sale of tobacco paid off in full the plaintiff's crop lien, except a small balance of eight or nine dollars.

"6. That the plaintiff H. Weil & Brothers sold said cotton on 10 May, 1930, and after paying the storage and weighing and other charges, the net proceeds amounted to $486.25, and thereupon the said Weil Brothers paid the $9.00 balance due on their crop lien and applied the balance of $477.75 on the $9,605.62 note."

Upon the verdict and the agreed facts aforesaid, the trial judge decreed that the plaintiffs recover of defendants the sum of $420.00, with interest, etc.

From judgment so rendered defendants appealed.

*Kenneth C. Royall and Allen Langston for plaintiffs.*
*Butler & Butler and P. D. Herring for defendants.*

BROGDEN, J. Can the owner of cotton which is covered by an unrecorded crop lien or chattel mortgage sell the same to a creditor then in possession thereof, in partial payment of a preexisting debt held by such creditor and due by such owner, free of the lien of such unregistered instrument?

The head note in *McArthur v. Mathis,* 133 N. C., 142, declares the applicable principle of law as follows: "Where the owner of lumber authorizes a creditor in possession thereof to sell it and pay himself, such trans-

action constitutes a present sale of the lumber and passes title, freed from the lien of an unregistered mortgage." This head note is fully supported by the opinion.

The defendants, however, assert that Weil was not a purchaser "for a valuable consideration" within the purview of C. S., 3311, North Carolina Code of 1931, by reason of the fact that the proceeds from the sale of the cotton were credited or applied to a preëxisting indebtedness of W. B. Herring, the owner of the cotton, and rely upon *Small v. Small,* 74 N. C., 16; *Day v. Day,* 84 N. C., 408; *Southerland v. Fremont,* 107 N. C., 565. The principle of law so relied upon by the defendants is stated in *Small, Admr., v. Small, supra,* as follows: "Counsel of the appellants did not refer to any case or give any reason in support of the position that a creditor who takes a deed of trust conveying a tract of land, to secure an existing debt, stands in a better condition than the debtor in regard to an equity which has attached to the land in the hands of the debtor. The creditor who takes a deed of trust is not out of pocket one cent, so he stands in the shoes of the debtor and takes subject to any equity binding the land in the hands of the debtor." Relying upon the principle so declared, the defendants assert that, as a chattel mortgage is good between the parties without registration, the cotton in the hands of W. B. Herring was subject to the equity of the unregistered lien of R. A. Herring, and consequently Weil received the cotton subject to such equity. But what equity has R. A. Herring by virtue of his unregistered lien? Manifestly, an unregistered lien cannot in itself create an equity. Indeed, this Court, in *Wallace v. Cohen,* 111 N. C., 103, 15 S. E., 892, commenting upon *Brem v. Lockhart,* 93 N. C., 191; *Potts v. Blackwell,* 56 N. C., 449, and *Southerland v. Fremont, supra,* said: "The true ground for the decision seems to be that although the assignee, Lockhart, was a purchaser for value, and notwithstanding he took the property subject to the rights and equities attaching to it in the hands of the debtor, there was, in fact, no such right of equity which, *under the policy of the registration laws,* could be recognized or enforced in favor of anyone." Such policy of the registration law was discussed in *Bank v. Cox,* 171 N. C., 76, 87 S. E., 967. The Court declared: "They contend that plaintiff was not a purchaser for value within the meaning of the registration laws, because its mortgage was made to secure an antecedent debt; but we have decided otherwise in numerous cases. . . . It is next contended that plaintiff had actual knowledge of the Whedbee deed of trust when it took the mortgage from E. L. Crumpler. It is thoroughly well settled that 'no notice, however full or formal, will supply the want of registration.'" See, also, *Sykes v. Everett,* 167 N. C., 600, 83 S. E., 585; *Fowle v. McLean,* 168 N. C., 537, 84 S. E., 852.

. The jury found that the debtor, W. B. Herring, disposed of the cotton without specifying the application of the proceeds. Consequently, the creditor had the right to apply the money according to his own judgment. *Baker v. Sharpe*, 205 N. C., 196, 170 S. E., 657.

The point is made that the cotton was grown upon the land of Betty Herring, the wife of the debtor, and that her husband, W. B. Herring, had no right to sell the same to the plaintiff Weil. An examination of the record discloses that the cause was not tried upon that theory, and the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court.

No Error.

SCHENCK, J., took no part in the consideration or decision of this case.