McGEE, Chief Judge, dissenting.
Defendant asks this Court to reverse the trial court's denial of his motion to suppress. Defendant argues Deputy Cranford did not have reasonable suspicion to stop him when the deputy observed him walking on the side of the road in Wilmington, North Carolina. Rather than address the sole issue presented by Defendant in this appeal, the majority and the concurrence choose to reach, and ultimately credit, a novel legal theory of admissibility advanced by the State that was never raised or considered in the trial court.
If the State's argument had been preserved, I would agree with the majority-with some reservations, outlined below-that Deputy Cranford's stop of Defendant was sufficiently attenuated from the discovery of the firearm under the Supreme Court of the United States' holding in Utah v. Strieff , ---U.S. ----, 136 S.Ct. 2056, 195 L.Ed.2d 400 (2016). However, the State failed to preserve its attenuation argument, and I respectfully dissent from the majority's decision to reach and credit that argument.
The rule the majority crafts is inconsistent with normal rules of preservation. This Court regularly refuses to consider arguments presented by a criminal defendant for the first time on appeal, reasoning that the argument has been waived by the defendant's failure to first make the argument to the trial court. There is no reason why this rule should operate differently for the State and, consistent with binding precedent, I would hold the State's failure to raise its attenuation argument in the trial court warrants dismissal of that argument here. Deputy Cranford's stop of Defendant was unconstitutional, and I would therefore reverse the trial court's denial of Defendant's motion to suppress and vacate his conviction.
I. Reasonable Suspicion to Stop Defendant
I first address whether there was a sufficient basis for Deputy Cranford to stop Defendant. The majority does not consider whether Deputy Cranford's conduct was unconstitutional, and instead proceeded directly to a discussion of whether the unconstitutional stop, if it existed, was attenuated from the discovery of the evidence the Defendant moved to suppress. However, consideration of the constitutionality of the stop is useful, since a determination that the stop was lawful would conclude our inquiry in this case. Also, even if the stop was unlawful, being able to identify precisely what conduct of Deputy Cranford was unjustified is valuable in the Strieff attenuation analysis.
The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. See U.S. CONST. AMEND. IV. The United States Supreme Court has held that "[a]n investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion." Ornelas v. United States , 517 U.S. 690, 693, 116 S.Ct. 1657, 1660, 134 L.Ed.2d 911, 917 (1996) (citing Terry v. Ohio , 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ). Reasonable suspicion is "a particularized and objective basis for suspecting the particular person stopped" has violated the law. Navarette v. California , 572 U.S. ----, ----, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680, 686 (2014).
As this Court has held,
the legal evaluation of a police officer's reasonable suspicion determination must be grounded in a pragmatic approach. Reasonable suspicion is a nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Our nation's highest court has acknowledged that the concept of reasonable suspicion is somewhat abstract and has deliberately avoided reducing it to a neat set of legal rules. As such, common sense and ordinary human experience must govern over rigid criteria.
State v. Mangum , --- N.C.App. ----, ----, 795 S.E.2d 106, 118 (2016) (citations, quotation marks, and brackets omitted). In order to meet the reasonable suspicion threshold, "[t]he officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch."
*21 State v. Knudsen , 229 N.C.App. 271, 284, 747 S.E.2d 641, 650 (2013) (quotation omitted). "An officer has reasonable suspicion if a reasonable, cautious officer, guided by his experience and training, would believe that criminal activity is afoot based on specific and articulable facts, as well as the rational inferences from those facts." State v. Williams , 366 N.C. 110, 116, 726 S.E.2d 161, 167 (2012). As a reviewing court, we "must consider the totality of the circumstances-the whole picture." Id.
In the present case, Deputy Cranford observed Defendant standing on the side of the road in an area known for high crime. Defendant was talking to an unknown person in a vehicle. Deputy Cranford testified that the vehicle was parked "partially in the road" with its brake lights engaged. Shortly after Deputy Cranford arrived in his police cruiser and stopped about twenty-five to fifty yards from the vehicle, the vehicle drove away at a normal speed and in a normal fashion. Deputy Cranford believed the driver of the vehicle "recognized [him] as a deputy" and drove off in an effort to avoid him. Deputy Cranford did not check the license plate of the vehicle, did not follow the vehicle, and did not know if the driver or any occupants of the vehicle were involved in any criminal activity. After the vehicle left, Defendant walked down the road with a cellphone in his hands.
Deputy Cranford testified he did not know if Defendant had exited the vehicle, that nothing about Defendant's appearance drew his attention, and that he did not know who Defendant was or what Defendant was doing. Deputy Cranford deemed the vehicle driving away as "suspicious" and testified it was his belief that Defendant's walking away "was in reaction to [Deputy Cranford's] presence as well[.]" On cross-examination, Deputy Cranford admitted that "no matter what [Defendant] did walking away from [the vehicle], [he] thought that was suspicious." Accordingly, Deputy Cranford drove past Defendant, turned around, and activated his blue lights to effectuate a stop. Deputy Cranford characterized Defendant as being "polite and cooperative" when he was first stopped. At the suppression hearing, the following exchange occurred between Deputy Cranford and the prosecutor:
[Prosecutor:] So what were your particularized concerns? Why did you stop to talk to [Defendant]?
[Deputy Cranford:] Due to the area that we were in and the reason when I got close the car pulled off. I saw [Defendant] walking away. I didn't know if he had gotten out of the [vehicle], if a-if he was lost, if a drug deal had just happened, or what was going on. So I wanted to get out and investigate and make sure everything was okay.
As the concurrence and I recognize, the totality of the circumstances of this case does not rise to the minimal level of objective justification required for a reasonable articulable suspicion under the Fourth Amendment. Deputy Cranford observed Defendant talking to someone in a vehicle that was haphazardly parked on the side of the road in a high crime area. According to Deputy Cranford's own testimony, he did not recognize Defendant, did not know if Defendant had been in the "suspicious" vehicle, and nothing about Defendant's actions or appearance drew Deputy Cranford's attention. The vehicle drove away at a normal speed and in a normal fashion, and Defendant merely walked down the road. Nevertheless, Deputy Cranford thought it "suspicious" that Defendant had spoken to someone in a vehicle. Rather than following the vehicle, Deputy Cranford chose to activate his blue lights and effectuate a stop of Defendant.
Deputy Cranford had, at most, an inchoate and unparticularized hunch that criminal activity was afoot. Therefore, Defendant's actions did not give rise to the minimal level of objective justification required by the Fourth Amendment. See, e.g. , Knudsen , 229 N.C. App. at 285, 747 S.E.2d at 651.
II. Merits of the Majority's Attenuation Analysis
As the majority correctly notes, evidence discovered as a result of an illegal search or seizure is generally excluded at trial. See Wong Sun v. United States , 371 U.S. 471, 487-88, 83 S.Ct. 407, 417-18, 9 L.Ed.2d 441, 455 (1963). Despite this general principle, there are several exceptions to the exclusionary rule, including the one at issue here: the attenuation doctrine. See generally *22 Utah v. Strieff , --- U.S. ----, ----, 136 S.Ct. 2056, 2060-61, 195 L.Ed.2d 400, 407 (2016). Whether an intervening event is sufficient to "break the causal chain between the unlawful stop and the discovery of" the evidence and is therefore "attenuated[,]" rests on three factors as noted by the majority: (1) "the temporal proximity between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search;" (2) "the presence of intervening circumstances;" and (3) "the purpose and flagrancy of the official misconduct." Strieff , --- U.S. at ----, 136 S.Ct. at 2062, 195 L.Ed.2d at 408. Had the State preserved its attenuation argument notwithstanding its failure to raise it at trial, which I will discuss later, I would generally agree with the majority that the facts of this case favor attenuation. However, I have the following reservations with the majority's application of Strieff 's three factors.
(A) Temporal Proximity Between the Stop and the Discovery of Evidence
The first step of Strieff analyzes the "temporal proximity between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search." Id. The majority does not analyze this factor at all, but rather proceeds directly to the second factor in the analysis. I believe that an analysis of whether an illegal stop is sufficiently attenuated from the discovery of some evidence is properly conducted by considering all three factors the Supreme Court of the United States identified as bearing on whether attenuation is present.
The discovery of the firearm in the present case occurred in extremely close proximity in time to the unconstitutional stop. After being seized, Deputy Cranford spoke for some time with Defendant, contacted dispatch, searched for outstanding warrants, and then again spoke with Defendant. All of these actions were part of the unconstitutional stop, and were undertaken while the stop was ongoing. Therefore, the discovery of the firearm, which occurred when Defendant pulled the firearm from his waistband and attempted to discharge it, occurred seconds after the unconstitutional stop. I would find that this factor favors attenuation.
(B) Intervening Circumstances
The second factor to consider in an attenuation analysis is whether there were sufficient intervening circumstances between the unconstitutional conduct and the discovery of the evidence. Strieff , --- U.S. at ----, 136 S.Ct. at 2062, 195 L.Ed.2d at 408. Like the majority, I believe that Deputy Cranford's observation of a new criminal act perpetrated by Defendant during the course of the stop serves as an intervening circumstance that strongly favors attenuation. At the suppression hearing, as the majority notes, Deputy Cranford testified that during the stop he asked Defendant to lift up his shirt and Defendant responded by raising his shirt, pulling a firearm from his waistband, pointing the gun at Deputy Cranford, and pulling the trigger. According to Deputy Cranford's testimony, the gun did not go off when the trigger was pulled.[1]
Deputy Cranford's testimony that Defendant had committed the criminal act of attempted first-degree murder breaks the causal chain between the unconstitutional stop and the discovery of the evidence, and is entirely unconnected from the stop. However, I would not go so far as to say, as the majority does, that the "commission of a separate and distinct criminal offense is alone sufficient ... to purge the taint of the ... illegal stop [.]" (emphasis added). In the present case, it is sufficient to hold that the intervening criminal act perpetrated by Defendant strongly favors attenuation and, along with the third factor (discussed below), would attenuate Deputy Cranford's unconstitutional stop from the discovery of the firearm. I would leave a broader holding-that the commission of a separate and distinct criminal offense will always be decisive-to an appropriate future case.
*23 (C) The Purpose and Flagrancy of the Official Misconduct
The final Strieff factor inquires into the purpose and flagrancy of the police misconduct. As the majority recognizes, "[t]he exclusionary rule exists to deter police conduct. The third factor of the attenuation doctrine reflects that rationale by favoring exclusion only when the police misconduct is most in need of deterrence-that is, when it is purposeful or flagrant." Strieff , --- U.S. at ----, 136 S.Ct. at 2063, 195 L.Ed.2d at 409 Like the majority, I would find that the third factor favors attenuation.
As the Supreme Court of the United States has held, there must be something more than a lack of reasonable suspicion in order for a finding of flagrancy to be appropriate. See Strieff , --- U.S. at ----, 136 S.Ct. at 2064, 195 L.Ed.2d at 410 ("For [a] violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure."). While Deputy Cranford's conduct in stopping Defendant was without reasonable suspicion, his errors and unconstitutional conduct do not rise to a "purposeful or flagrant violation of [Defendant's] Fourth Amendment rights," nor is there any indication on this record that the stop "was part of any systemic or recurrent police misconduct." Id.
III. Preservation of Attenuation Argument
Had the State raised and argued to the trial court its theory that Deputy Cranford's stop of Defendant was sufficiently attenuated from the discovery of the firearm, my disagreement with the majority would end here. However, the State failed to argue its attenuation argument in the trial court, and this Court should not address it in the first instance. At trial, Defendant moved to suppress the evidence found in the search, arguing that Deputy Cranford's stop violated his rights under the Fourth Amendment to the United States Constitution. At the hearing on Defendant's motion, the State presented evidence from Deputy Cranford and his superior officer. Thereafter, the State defended the constitutionality of the stop solely on the grounds that Deputy Cranford possessed reasonable suspicion to stop Defendant. The trial court ruled exclusively on that basis, and found that Deputy Cranford possessed reasonable suspicion to stop Defendant. The attenuation doctrine was never raised by the State and, as the majority concedes, the words "attenuation" and "intervening circumstance" were never spoken at the suppression hearing.
As the majority notes, the question for this Court when reviewing a trial court's ruling on a motion to suppress "is whether the ruling of the trial court was correct and not whether the reason given therefor [was] sound or tenable. The crucial inquiry for this Court is admissibility and whether the ultimate ruling was supported by the evidence ." State v. Bone , 354 N.C. 1, 8, 550 S.E.2d 482, 486 (2001) (emphasis added). The majority reads the second clause, italicized above, from Bone 's holding. When considering the admissibility of the evidence, we must consider whether the "ultimate ruling" of the trial court was supported by the evidence. The "ultimate ruling" of the trial court in the present case was that the motion to suppress should be denied because Deputy Cranford had reasonable suspicion to stop Defendant. As discussed above, this ruling was incorrect.
We should not suggest that the trial court's "ultimate ruling" denying Defendant's motion to suppress-because Deputy Cranford had reasonable suspicion to stop Defendant-also contained an unwritten, but implied, alternative ruling that, if Deputy Cranford's stop was unconstitutional, the unconstitutional stop was sufficiently attenuated from the discovery of the evidence so as to be admissible. The trial court never ruled on whether the unconstitutional stop was sufficiently attenuated from the discovery of the evidence, because attenuation was never raised by the State.
The majority suggests that the "occurrence of an intervening event" only "becomes an issue" if the trial court "finds the underlying illegality," and that an "intervening event" is not an "arguable issue" until the defendant "sustain[s] his burden of persuasion on the illegality of the police conduct." I disagree. The legality of Deputy Cranford's stop of Defendant and the admissibility of the firearm found on Defendant was at issue. In fact, it was the only issue being litigated *24 in Defendant's motion to suppress. The State argued, uninterrupted and at length, in opposition to Defendant's motion to suppress. Nothing limited the State from arguing an alternative position, such as attenuation, the position it now raises in this Court in the first instance. Litigants make alternative arguments in support of legal positions in our trial courts on a daily basis, and waive the arguments they fail to make. If the majority were correct, the State would only raise its "intervening event" theory[2] after the trial court had determined that the stop was not supported by reasonable suspicion. But at that point, it would have been too late-the trial court would have already ruled on and granted Defendant's motion to suppress.
The State had ample opportunity and compelling reason to raise its attenuation argument as an alternative to its argument that the stop was supported by a reasonable suspicion. Although Strieff had not yet been decided by the Supreme Court of the United States, Strieff did not change governing law; it only supplemented existing law by applying the factors set out in Brown v. Illinois , 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The attenuation doctrine is firmly rooted in North Carolina law, and has been considered and applied in North Carolina Supreme Court cases decades old. See, e.g., State v. Allen , 332 N.C. 123, 127-28, 418 S.E.2d 225, 228-29 (1992) ; State v. Freeman , 307 N.C. 357, 359-60, 298 S.E.2d 331, 332-33 (1983). If the State had wished to argue an alternative position, it was required to do so in the trial court in the first instance. The State clearly knows how to make such an alternative argument, as they did so in their brief to this Court in this case.
This Court confronted a similar situation in State v. Gentile , 237 N.C.App. 304, 766 S.E.2d 349 (2014). In Gentile , the trial court granted the defendant's motion to suppress evidence found in a search of his home, holding that when the officers noticed the smell of marijuana emanating from the residence, they "were not in a place in which they had a right to be." Gentile , 237 N.C.App. at 308, 766 S.E.2d at 352. On appeal, this Court agreed with the trial court that the officers were in a place they had "no legal right to be" when they smelled the marijuana, which was the basis for the search. Id. at 310, 766 S.E.2d at 353. After so holding, the trial court turned to the State's belated argument that
even if the detectives' entry onto constitutionally protected areas of defendant's property was unlawful, the trial court erred by granting the motion to suppress because it failed to examine the remaining portions of the search warrant affidavit to determine if the warrant was still supported by probable cause, absent the odor of marijuana.
Id. Confronted with this argument, this Court held that the State had "failed to preserve this issue on appeal" because "the State never argued before the trial court that the motion to suppress should be denied because even if the detectives had no legal right to be on the driveway when they smelled the marijuana, the remaining portions of the search warrant were nevertheless sufficient to establish probable cause." Id. at 310, 766 S.E.2d at 353-54. Accordingly, this Court dismissed the State's alternative argument as unpreserved. Id.
The circumstances of the present case are no different from the ones confronted by this Court in Gentile . In the present case, as in Gentile , the State failed to argue to the trial court its alternative theory as to why Defendant's motion to suppress should be denied. Since "the State never argued before the trial court that the motion to suppress should be denied because" the discovery of the evidence was sufficiently attenuated from Deputy Cranford's unconstitutional conduct, the State "failed to preserve this issue on appeal." Id. at 310, 766 S.E.2d at 353. This Court is bound by Gentile 's reasoning. In re Civil Penalty , 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989).
*25 The majority suggests that Gentile is "easily distinguishable" from the present case because in Gentile "the State sought to overturn the trial court's ruling, which granted the defendant's motion to suppress," while in this case the State seeks to defend the trial court's denial of Defendant's motion to suppress. Respectfully, I disagree with the majority's attempt to distinguish Gentile , and note it creates a needlessly complicated and unfair rule of preservation. Under the majority's theory, in Gentile , all the State would have had to do to be able to "swap horses" would have been to convince the trial court that their incorrect theory-the police were in a place in which they had a lawful right to be when they smelled the marijuana-was in fact correct. In that circumstance, the State would have been free to "swap" that theory for any other theory on appeal-including the one we refused to consider because it was not properly preserved-while the defendant would have been relegated to those theories it preserved by arguing them to the trial court. In other words, whether a litigant is bound by the arguments it makes in the trial court depends only upon whether the arguments were accepted by the trial court, regardless of whether the trial court was correct. If the State loses a motion to suppress-i.e. a defendant's motion to suppress is granted-then the State is forever wedded to whatever theory it presented at trial. If, however, the defendant's motion to suppress is denied-on an incorrect or otherwise untenable theory-the State may thereafter argue any legal theory it wishes in order to preserve its favorable ruling. This is, in my view, an untenable theory of preservation.
This Court has held, time and again, that when a "defendant presents a different theory [on appeal] to support his motion to dismiss than that he presented at trial, this assignment of error is waived." State v. Euceda-Valle , 182 N.C.App. 268, 272, 641 S.E.2d 858, 862 (2007) (emphasis added) (citation omitted); see also State v. Chapman , --- N.C.App. ----, ----, 781 S.E.2d 320, 330 (2016) ("Because [the defendant] has failed to properly preserve the specific argument she now seeks to make on appeal regarding the basis upon which her motion to dismiss should have been granted, we decline to reach the merits of her argument." (emphasis added) (citations omitted)). It appears arbitrary to declare some arguments preserved and others unpreserved, not by whether those arguments were raised at trial, but rather simply by virtue of who obtained a favorable ruling by the trial court, regardless of whether that ruling was correct.
Ironically, in the present case the majority would agree that the State could not raise its attenuation argument in this Court, if only the trial court had gotten the law right . If the trial court had correctly determined Officer Cranford's stop of Defendant violated the Fourth Amendment, Defendant would be able to defend that ruling under any theory he wished on appeal, while the State would be confined to that theory raised in the trial court. Since the State inexplicably did not raise the attenuation doctrine in the trial court, it would be barred from doing so in this Court in the first instance.
The North Carolina Rules of Appellate Procedure were designed to further "fundamental fairness and the predictable operation of the courts[.]" State v. Hart , 361 N.C. 309, 317, 644 S.E.2d 201, 206 (2007). On appeal to this Court, Defendant focused the arguments in his principal brief exclusively on whether Deputy Cranford had reasonable suspicion to seize him under the Fourth Amendment. Defendant did so for good reason: the State's argument urging the trial court to deny his motion to suppress, and the trial court's ultimate ruling on that motion to suppress, were exclusively focused on whether reasonable suspicion existed for the stop. After Defendant filed his brief in this Court, though, the ground shifted beneath his feet; the State filed a brief waiving any argument that the stop was supported by reasonable suspicion and moved forward exclusively on the theory that the presence or absence of reasonable suspicion did not matter because the stop was attenuated from the discovery of the evidence.
Upon receiving the State's brief, Defendant was forced to litigate that new issue, never before considered or passed upon within the context of the present case, in a reply *26 brief. To avoid being blindsided, should a defendant now make arguments on appeal, and then proceed to preemptively research and brief any alternative bases the State may conceivably argue to defend the trial court's ruling? Perhaps not, lest a defendant give the State any ideas about new theories of admissibility. Preservation and the appellate rules are designed to prevent this circumstance.
Our Supreme Court has held that "the law does not permit parties to swap horses between courts in order to get a better mount [on appeal]." Weil v. Herring , 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) ; see also State v. Sharpe , 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) ("This Court has long held that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court." (citation omitted)). The majority suggests this rule only applies "to instances where the party ... carrying the burden on appeal to show error in the lower court's ruling on appeal, and relies upon a theory not presented before the lower court." But the Supreme Court in Weil did not equivocate: it held that a party -not just an appellant, but a party -may not "swap horses" between courts to gain a better mount on appeal. Weil , 207 N.C. at 10, 175 S.E. at 838. Applying this rule to both appellants and appellees is sensible, as it ensures fairness and requires litigants to present legal arguments they believe to be meritorious to the trial court before presenting them to an appellate court.
In faithfully following our Supreme Court's precedent, along with that precedent's necessary implications, our Supreme Court's holdings in Wiel and Sharpe decide this case in Defendant's favor. It is undisputed that the State never argued its attenuation theory in the trial court. The State proceeded only on the theory that Deputy Cranford's stop of Defendant was permissible because reasonable suspicion was present, and in denying Defendant's motion to suppress the trial court only ruled on that basis. This precludes the State from raising its attenuation argument on appeal in the first instance.
This Court regularly dismisses arguments first advanced by defendants on appeal in criminal cases, reasoning that those arguments have been waived due to the defendants' failure to raise them in the trial court. See, e.g. , State v. Mastor , --- N.C.App. ----, ----, 777 S.E.2d 516, 521 (2015) (dismissing a defendant's argument where the defendant did not "raise or argue" the objection in the trial court, reasoning that the defendant "failed to preserve [the] issue for appellate review"). That rule should operate no differently for the State.[3] Attenuation is a theory of admissibility wholly independent from whether reasonable suspicion existed for a stop. I would hold that if the State wishes to argue alternative legal theories of admissibility, the onus is on the State to make those arguments to the trial court. Because Deputy Cranford's stop of Defendant was unconstitutional and the State failed to preserve its attenuation argument, I would reverse the trial court's denial of Defendant's motion to suppress and vacate his conviction. I dissent from the majority's decision to reach the State's belated attenuation argument.
Invocation of N.C.R. App. P. Rule 2
I also dissent from the majority's decision to "rule to invoke Rule 2 [of the North Carolina Rules of Appellate Procedure] in this case[.]" The majority concludes that, even if the State's argument regarding attenuation was not preserved, this case is a proper one for this Court to dispense with the rules of appellate procedure by invoking N.C.R. App. P. 2. I disagree. As our Supreme Court has repeatedly stated: " Rule 2 relates to the residual power of our appellate courts to consider, in exceptional circumstances, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court and only in such instances." State v. Hart , 361 N.C. 309, 315-16, 644 S.E.2d 201, 205 (2007) (citation omitted). "This assessment-whether *27 a particular case is one of the rare 'instances' appropriate for Rule 2 review-must necessarily be made in light of the specific circumstances of individual cases and parties, such as whether substantial rights of an appellant are affected." State v. Campbell , ---N.C. ----, ----, 799 S.E.2d 600, 602 (2017) (citations omitted).
The present case does not implicate "significant issues of importance in the public interest." Defendant in this case was convicted of a single offense, possession of a stolen firearm, which is punishable as a class H felony. See N.C. Gen. Stat. § 14-71.1 (2015). I do not see the merit in the majority's apparent assertion that any shooting or attempted shooting of a police officer-the only fact the majority propounds as a reason for invoking Rule 2 -is a de facto reason to dispense with the rules of appellate procedure. Such a rule would absolve the State of its need to follow normal preservation rules in any case that allegedly involved the shooting (or, as here, an alleged attempted shooting) of an officer, and would come close to the creation of an "automatic right to review via Rule 2" for police shooting cases, a type of rule our Supreme Court very recently rejected. See Campbell , --- N.C. at ----, 799 S.E.2d at 603 ("In simple terms, precedent cannot create an automatic right to review via Rule 2. Instead, whether an appellant has demonstrated that his matter is the rare case meriting suspension of our appellate rules is always a discretionary determination to be made on a case-by-case basis."). The present case, in my view, also fails to implicate any manifest injustice. Rather, the State would only be forced to proceed on appeal on those legal theories that it raised in the trial court.
IV. Conclusion
Due to a lack of reasonable suspicion, Deputy Cranford's stop of Defendant violated Defendant's right to be free from unreasonable searches and seizures under the Fourth Amendment. The State does not contest this fact, and on appeal only defends the stop by arguing that the discovery of the evidence was sufficiently attenuated from Deputy Cranford's unconstitutional conduct. Had attenuation been raised and preserved by the State in the trial court, I agree with the majority that the discovery of the firearm would have been sufficiently attenuated from Deputy Cranford's unconstitutional stop of Defendant.
But the State failed to raise its attenuation argument before the trial court, and cannot raise it here for the first time. I dissent from the majority's and the concurrence's decision to address the State's belated attenuation argument. The preservation rule the majority crafts is untenable, and by faithfully applying precedent from this Court and our Supreme Court, I would dismiss the State's belated argument, reverse the trial court's denial of Defendant's motion to suppress, and vacate Defendant's conviction. I further dissent from the majority's and the concurrence's alternative decision to invoke N.C.R. App. P. 2.

The jury apparently did not credit Deputy Cranford's testimony on this point, finding Defendant not guilty of attempted first-degree murder. However, in reviewing a trial court's ruling on a motion to suppress, we examine the evidence in the light most favorable to the State. See State v. Hunter, 208 N.C.App. 506, 509, 703 S.E.2d 776, 779 (2010).

I note that an "intervening event," or intervening circumstance, is only one of the three factors used to determine if the discovery of some evidence is sufficiently attenuated from unconstitutional conduct. See Strieff, --- U.S. at ----, 136 S.Ct. at 2061, 195 L.Ed.2d at 408. For ease of reading, I employ the nomenclature employed by the majority.

Though not dispositive, the United States Court of Appeals for the Tenth Circuit has similarly held that attenuation arguments not raised in the trial court are waived on appeal. See United States v. Hernandez, 847 F.3d 1257, 1261-62 (10th Cir. 2017) (holding the government waived its attenuation argument by not making that argument to the district court).